Merrimack,
No. 4814.

CARMINE TAMELLEO

DANNY RAIMONDI

*v.*

NEW HAMPSHIRE JOCKEY CLUB, INC.

d/b/a ROCKINGHAM PARK, AND

VINCENT MURPHY.

Argued June 7, 1960.
Decided July 19, 1960.

*Shaw & Donovan* (*Mr. Shaw* and *Mr. Donovan* orally), for the plaintiffs.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Graf* orally), for New Hampshire Jockey Club, Inc.

*Sheehan, Phinney, Bass, Green & Bergevin* (*Mr. Phinney* orally), for Vincent Murphy.

BLANDIN, J. The plaintiffs argue that there is no common-law right in this state to operate a pari-mutuel race track and, assuming there is, that this state does not recognize the common-law rule that the proprietor of a private enterprise, not a public calling, can discriminate without cause among his patrons.

It is firmly established that at common law proprietors of private enterprises such as theaters, race tracks and the like, may admit or exclude anyone they choose. *Woollcott* v. *Shubert,* 217 N. Y. 212, 222; *Madden* v. *Queens County Jockey Club,* 296 N. Y. 249, *cert. denied* 332 U. S. 761; anno. 1 A. L. R. (2d) 1165; 86 C. J. S., Theaters and Shows, s. 31. While it is true, as the plaintiffs argue and the defendants concede, that there is no common-law right in this state to operate a race track where pari-mutuel pools are sold, horse racing for a stake or price is not gaming or illegal. *Opinion of the Justices,* 73 N. H. 625, 631.

However, the fact that there is no common-law right to operate a pari-mutuel race track is not decisive of the issue before us. The business is still a private enterprise since it is affected by no such public interest so as to make it a public calling as is a railroad for example. *Garifine* v. *Monmouth Park Jockey Club,* 29 N. J. 47; *Madden* v. *Queens County Jockey Club, supra.* Regulation by the state does not alter the nature of the defendant's enterprise, nor does granting of a license to conduct pari-mutuel pools. *North Hampton &c. Assn.* v. *Commission,* 94 N. H. 156, 159; *Greenfeld* v. *Maryland Jockey Club,* 190 Md. 96. As the *North*

*Hampton* case points out, regulation is necessary because of the social problem involved. *Id.,* 159.

We have no doubt that this state adheres to the general rule that the proprietors of a private calling possess the common-law right to admit or exclude whomsoever they choose. In *State* v. *Express Co.,* 60 N. H. 219, after holding that a public carrier cannot discriminate, *Doe,* C. J. stated, "Others, in other occupations, may sell their services to some, *and refuse to sell to others." Id.,* 261. (Emphasis supplied).

In *Batchelder* v. *Hibbard,* 58 N. H. 269, the court states that a license, so far as future enjoyment is concerned, may be revoked any time. A ticket to a race track is a license and it may be revoked for any reason in the absence of a statute to the contrary. *Marrone* v. *Washington Jockey Club,* 227 U. S. 633.

Cases cited by the plaintiffs in support of a contrary proposition are clearly distinguishable. For example, in *Sterling* v. *Warden,* 51 N. H. 217, the right invoked was to enter a United States post office. It was of course upheld. Dicta to the effect that one who keeps a store is "presumed to license all persons to enter who come there for lawful purposes" (*Id.* 231) merely supports the proposition that one who enters such a place is not a trespasser unless his license is revoked. See *Batchelder* v. *Hibbard, supra.* In short, we find no reason to believe New Hampshire has departed from the rule laid down by the overwhelming weight of authority in regard to the right of owners of private enterprises to discriminate as they choose between those seeking admission to their places of business.

The plaintiffs also contend that if this be our law, we should change it in view of altered social concepts. This argument ignores altogether certain rights of owners and taxpayers, which still exist in this state, as to their own property. Furthermore, to adopt the plaintiffs' position would require us to make a drastic change in our public policy which, as we have often stated, is not a proper function of this court.

The plaintiffs take the position that RSA 284:39, 40, as inserted by Laws 1959, *c.* 210, *s.* 4, is invalid as an unconstitutional delegation of legislative power. We cannot agree. Laws 1959, *c.* 210 is entitled: "AN ACT RELATIVE TO TRESPASSING ON LAND OF ANOTHER AND AT RACE TRACKS AND DEFINING CULTIVATED LANDS." Section 4 (RSA 284:39), under the heading "TRESPASSING" reads as follows: "RIGHTS OF LICENSEE. Any licensee hereunder shall have

the right to refuse admission to and to eject from the enclosure of any race track where is held a race or race meet licensed hereunder any person or persons whose presence within said enclosure is in the sole judgment of said licensee inconsistent with the orderly and proper conduct of a race meeting." As applied to this case this provision is substantially declaratory of the common law which permits owners of private enterprises to refuse admission or to eject anyone whom they desire. *Garifine* v. *Monmouth Park Jockey Club*, 29 N. J. 47.

The penalty provision, section 4 (RSA 284:40) states: "PENALTY. Any person or persons within said enclosure without right or to whom admission has been refused or who has previously been ejected shall be fined not more than one hundred dollars or imprisoned not more than one year or both." This provision stands no differently than does that imposing a penalty upon one who enters without right the cultivated or posted land of another. RSA 572:15 (supp.) as amended. One charged with either of these offenses or with trespass at a race track would of course have a right to trial and the charge against him would have to be proved, as in any other criminal matter. No license to pass any laws is given to the defendant. The situation is clearly unlike that condemned in *Ferretti* v. *Jackson,* 88 N. H. 296, and *Opinion of the Justices,* 88 N. H. 497, upon which the plaintiffs rely, where the milk board was given unrestricted and unguided discretion, in effect, to make all manner of laws within the field of its activity. It thus appears that there is no unlawful delegation of legislative powers in the present case.

We interpret that part of the statute which allows the defendant licensee to exercise its "sole judgment" to mean that the judgment cannot be exercised in a capricious, arbitrary or unreasonable manner. There being no finding upon this question of fact before us, the order is

*Remanded.*

WHEELER, J., did not sit; the others concurred.