(Nos. 53366, 53625, 53719.—

ROBERT L. PHILLIPS, Appellee, v. ROBERT H. GRAHAM, *et al.*, Appellants.—BERNARD SCOTT, Appellee, v. LARRY CASSAVANT *et al.* (The Illinois Racing Board, Appellant).

*Opinion filed September 30, 1981.*

Robert E. McGlynn, of Belleville, for appellants Robert H. Graham and Southern Illinois Trotting Corporation.

Tyrone C. Fahner, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellant Illinois Racing Board.

Leon G. Scroggins, of Granite City, for appellee Robert L. Phillips.

William E. Brandt, of Granite City, for appellee Bernard Scott.

MR. JUSTICE WARD delivered the opinion of the court:

This appeal represents the consolidation of three cases. In two of the cases Bernard Scott and Robert Phillips, who are licensed harness-racing drivers, owners and trainers, were by formal order excluded from the premises of all racetracks under the jurisdiction of this State after separate indictments were returned against them by a grand jury in the circuit court of Madison County. Scott was charged in two counts with accepting a bribe and with failing to report a bribe which was intended to influence his efforts as a harness driver in a race at Fairmount Park in January of 1980. Phillips was charged with offering a bribe to another driver in the same race. Scott and Phillips, in separate proceedings in the circuit court of Madison County, applied for and obtained injunctions which barred the racetrack owners and the Illinois Racing Board (Board) from enforcing the exclusion order. The ground for their applications

was a claim that section 9(e) of the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1979, ch. 8, par. 37—9(e)), which authorizes the exclusion of occupation licensees by organization licensees for "just cause," was violative of their rights to procedural due process and, further, that this section represented an unconstitutional delegation of legislative authority to private persons. We granted the Board's motion for direct appeal in each case and consolidated the cases with a separate appeal that had been filed by Robert Graham, vice-president and general manager of Fairmount Park Race Track. 73 Ill. 2d R. 302(b).

The record shows that on March 26, 1980, a grand jury in Madison County returned an indictment against Robert Phillips for conspiring to bribe another harness driver not to use his best efforts in the 10th race on January 8, 1980, at Fairmount Park Race Track in Collinsville. Robert Graham, who was employed as vice-president and general manager of the track, and who was aware of a State investigation into rumored bribery schemes on the track premises, sent a letter to Phillips on the day the indictment was filed informing him that he was excluded from the grounds of Fairmount Park. The reason stated for excluding Phillips was his indictment. In his letter, Graham cited section 9(e) of the Illinois Horse Racing Act of 1975 as authority for his action. This section provides:

> "[The Illinois Racing] Board, and any person or persons to whom it delegates this power, may eject or exclude from any race meeting or organizational grounds or any part thereof, any occupation licensee or any other individual whose conduct or reputation is such that his presence on organization grounds may, in the opinion of the Board, call into question the honesty and integrity of horse racing or interfere with the orderly conduct of horse racing; ***. The power to eject or exclude occupation licensees may be exercised for just cause by the organization licensee or the Board, subject to subsequent hearing by the Board as

to the propriety of said exclusion." Ill. Rev. Stat. 1979, ch. 8, par. 37—9(e).

On March 27, Phillips obtained a temporary restraining order against Graham, prohibiting enforcement of the exclusion order. The restraining order was later amended to include the Board, which had been added by the plaintiff as a party. The court in its order, however, also directed Phillips to seek an immediate hearing before the Board on the legality of his exclusion. A hearing was conducted before an officer of the Board on April 7, which resulted in an order affirming Graham's decision to exclude the plaintiff. The hearing officer also enlarged the order to exclude Phillips from all racetracks under the Board's jurisdiction. A hearing before the full board was set for April 23. On April 15 the circuit court issued a preliminary injunction enjoining any action by the defendants to exclude the plaintiff until further action by the full board. After an evidentiary hearing on April 23, the six-member board voted unanimously to affirm the hearing officer's decision.

Subsequent to the Board's decision, however, the circuit court, on May 5, entered a permanent injunction against the "Board and its organization, licensees, and stewards acting under the authority of the Board *** from enforcing any exclusion against petitioner until the issues in this case are reached either by an appeal from this Order or administrative review of the Racing Board's determination, or the issuance of an opinion in some other case determinative of the issues raised herein." The issues alluded to in the order were raised by the plaintiff and concerned claims of violation of procedural due process in that the plaintiff was excluded by Graham, the organization licensee, without a hearing and also the ground that Graham had no constitutional authority to issue an exclusion order since he was not a member of the Racing Board. The defendants had contested the circuit court's authority to issue an injunction, arguing that, as the plaintiff had not exhausted his admini-

strative remedies under the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1979, ch. 127, par. 1001 *et seq.*), the court had no jurisdiction.

The circumstances leading to the exclusion of Bernard Scott were similar to those in Phillips' case. A two-count indictment was returned against Scott in the circuit court of Madison County on April 9, 1980, charging acceptance of a bribe and a failure to report a bribe intended to affect his performance in the 10th race at Fairmount Park on January 8, 1980. On May 7, 1980, Scott received a letter signed by two State Racing Board stewards stating that he was barred from the Quad-City Downs, located in East Moline, as well as every other racetrack in Illinois. As in the case of Phillips, the only ground given for Scott's exclusion was his indictment. Scott filed, on May 13, a notice of intention to appeal from the stewards' ruling to the Racing Board pursuant to rules promulgated by the Board. A hearing was held on May 23 at which the Board affirmed the stewards' decision to exclude Scott. On May 28 he obtained a temporary restraining order in the circuit court of Madison County, and on June 6 the court entered a preliminary injunction against Larry Cassavant, general manager of Quad-City Downs, and the Board, barring the enforcement of the exclusion order until further order of the court.

The questions presented are (1) whether the exclusion orders violated the plaintiffs' right to procedural due process; (2) whether the authority given organization licensees to exclude occupation licensees under section 9(e) was an unconstitutional delegation of legislative power; (3) whether the circuit court had jurisdiction to consider the plaintiff's application for an injunction; and (4) whether the injunctions properly issued.

In considering whether an individual has been deprived of "life, liberty or property" without due process of law (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, 2) we must first determine whether a protectable interest was involved.

(See *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 294.) There is no question that the license of the plaintiffs to pursue an occupation, as a trainer, owner and driver of harness horses, is a property interest given protection by the due process clause. (*Barry v. Barchi* (1979), 443 U.S. 55, 64, 61 L. Ed. 2d 365, 375, 99 S. Ct. 2642, 2649. See also *Board of Regents v. Roth* (1972), 408 U.S. 564, 572, 33 L. Ed. 2d 548, 558, 92 S. Ct. 2701, 2706-07, quoting *Meyer v. Nebraska* (1923), 262 U.S. 390, 399, 67 L. Ed. 1042, 1045, 43 S. Ct. 625, 626; *Slaughter-House Cases* (1873), 83 U.S. (16 Wall.) 36, 21 L. Ed. 394; *Pozner v. Mauck* (1978), 73 Ill. 2d 250, 254; *Rios v. Jones* (1976), 63 Ill. 2d 488, 496-97.) Therefore, the plaintiffs could not have been "finally deprived" of their property interest until a hearing was held to determine the rights of the parties. (*Mathews v. Eldridge* (1976), 424 U.S. 319, 333, 47 L. Ed. 2d 18, 32, 96 S. Ct. 893, 902. See generally *Fuentes v. Shevin* (1972), 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983.) Regarding the question of when this hearing must take place, the Supreme Court has held that "'[w]here only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for ultimate judicial determination is adequate.'" *Mitchell v. W. T. Grant Co.* (1974), 416 U.S. 600, 611, 40 L. Ed. 2d 406, 416, 94 S. Ct. 1895, 1902, quoting *Phillips v. Commissioner* (1931), 283 U.S. 589, 596-97, 75 L. Ed. 1289, 1297, 51 S. Ct. 608, 611.

To determine whether due process requires an evidentiary hearing prior to the impairment or deprivation of a property right, as opposed to a hearing thereafter, the Supreme Court has said that an "analysis of the governmental and private interests that are affected" is necessary. (*Mathews v. Eldridge* (1976), 424 U.S. 319, 334, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 902.) In *Mathews v. Eldridge* the Supreme Court went on to say:

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct fac-

tors: First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of any additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903.

The plaintiffs first argue that their interest in pursuing their occupation will be irreparably impaired if the defendants asserted right to exclude them, prior to a judicial determination of their guilt, is upheld. The irreparable impairment or harm which the plaintiffs claim is monetary; if they are excluded from all Illinois racetracks they will be unable to practice their occupation and thus will suffer an irreversible economic loss. We do not see the effect as being as drastic as the plaintiffs say. First, the potential loss of earnings is reduced by the fact that the plaintiffs, under the exclusion order, are still able to train and race their horses, albeit through other owners, trainers or drivers. Second, the order did not impose the more serious penalty of suspension or revocation. Thus, the plaintiffs' licenses remained unaffected, allowing them to carry on with their occupation, though admittedly under the restriction that they could not pursue their activities in person on racetrack premises. Third, the order would not affect races taking place outside the State. The record shows that Phillips had planned to enter a race in Kentucky on April 15. From these considerations, we conclude that there was no "final deprivation" of property without a prior hearing as would violate procedural due process.

With respect to "the risk of erroneous deprivation," which is the second consideration in *Mathews*, we would note, as illustrated above, that the deprivation here is only partial. The plaintiffs contend, however, that any decision

to exclude or "deprive" must be based on reasonable or good cause. They argue that using the fact of an indictment as the sole ground of the decision to exclude does not satisfy the claimed requirement of reasonable cause.

We would observe that section 9(e) does not use the term "reasonable or good cause" as the standard for the exclusion of an occupation licensee, but instead it provides that "[t]he power to eject or exclude occupation licensees may be exercised for *just cause* by the organization licensee or the Board, subject to subsequent hearing by the Board as to the propriety of said exclusion." (Emphasis supplied.) Ill. Rev. Stat. 1979, ch. 8, par. 37—9(e).

The decisions cited by the plaintiffs, for example, with respect to the presumption of innocence following indictment are not relevant here. We are considering only whether an indictment for bribery, a bribery intended to affect the outcome of a horse race, could be judged as just cause for the plaintiffs' exclusion.

In considering this question we look, too, to the function of the grand jury. A grand jury has a general duty to "inquire into offenses which come to its knowledge whether from the court, the State's Attorney, its own members, or from any source." (*People v. Sears* (1971), 49 Ill. 2d 14, 30.) The principal purpose of its inquiry is to determine whether there is probable cause to believe that a crime has been committed. (See *People v. Creque* (1978), 72 Ill. 2d 515, 523, quoting 1 Wigmore, Evidence § 4, at 21 (3d ed. 1940); *United States v. Gardner* (7th Cir. 1975), 516 F.2d 334, *cert. denied* (1975), 423 U.S. 861, 46 L. Ed. 2d 89, 96 S. Ct. 118.) The decisions to exclude Phillips and Scott were not based on simple rumor or innuendo but upon formal charges by the grand jury in the name of the People of the State that crimes had been committed by each defendant. Considering the gravity of the accusations and especially that the indictments related directly to the "honesty and integrity of horse racing" (Ill. Rev. Stat. 1979, ch. 8, par. 37—9(e)), the

occupation licensee, Robert Graham and the Racing Board had just cause to exclude the plaintiffs. That the indictment was later dismissed as to Phillips is not relevant to the question of whether just cause existed earlier.

Too, the procedure established by the Racing Board to determine promptly the propriety of an exclusion order issued by an organization licensee significantly reduces the "risk of erroneous deprivation." Sections (a) and (c) of Rule A 4.02 promulgated by the Board under authority of the Act (Ill. Rev. Stat. 1979, ch. 8, par. 37—9) provide:

"(a) Any person aggrieved by a decision ruling, recommendation or other action of the judges or stewards of any race meeting may as a matter of right request a hearing before the Board. Such a hearing shall be a proceeding de novo.
* * *

(c) Appeals from orders of the stewards or judges suspending an occupation licensee or from orders of the organization licensee (race track) ejecting or excluding an occupation licensee shall be instituted by filing a written request for a hearing no later than five days after receipt of notice of suspension, ejection or exclusion has been communicated to the licensee. The Board will conduct its hearing within seven days after such request has been received by the Board unless the licensee requests a postponement for good cause."

Thus, a licensee can obtain a *de novo* hearing before the Board as early as one week and no later than 12 days after receiving an exclusion order. The presence of these rules of the Board provided "procedural safeguards" as is referred to in *Mathews*.

Considering governmental interest, the third factor in the *Mathews* test, it is plain that this interest is involved.

Where a State has the authority to prohibit a privilege or activity it has as an alternative the right under the police power to impose restrictions and conditions on its enjoyment or use so long as they do not amount to a violation of

established constitutional rights. (*Frost v. Railroad Com.* (1925), 271 U.S. 583, 70 L. Ed. 1101, 46 S. Ct. 605.) Wagering or gambling is an activity which is "subject to regulation or to complete prohibition" (*Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 138) and one in which the State's interest in protecting the public from dishonest practices and in preserving the integrity of horse racing is clear. It is a truism to say that the horse-racing industry depends upon public confidence in the sport and upon integrity and professional efficiency in its operation. A review of the Horse Racing Act and its comprehensive and detailed list of statutory requirements discloses the legislature's interest in imposing strict controls on an industry which on occasion has been vulnerable to dishonest men and practices. Permitting persons under indictment for bribery in horse racing to continue to participate at tracks as owners, trainers or drivers can only serve to provoke public suspicion and criticism and to reduce the substantial revenues derived by the State from racing. The provision in section 9(e) permitting an organization licensee to exclude an occupation licensee from racetrack premises under section 9(e) for just cause is a reasonable and appropriate provision by the legislature under its police powers to protect public health and safety and to promote the public welfare. (See *City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111, 114-15; *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453-54; *Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 138-40; *Pozner v. Mauck* (1978), 73 Ill. 2d 250, 254-55.) Excluding the plaintiffs because of their having been indicted, though an evidentiary hearing was not conducted prior to the order of exclusion, was not, under the circumstances here, violative of due process.

Our holding is supported by a recent Supreme Court decision involving facts which resemble those here. In *Barry v. Barchi* (1979), 443 U.S. 55, 61 L. Ed. 2d 365, 99 S.

Ct. 2642, a licensed New York horse trainer was summarily suspended under statutory provisions without a hearing after a post-race urinalysis of one of his horses revealed the presence of an illegal drug. Under the New York statute it is presumed that the drug was either administered by the trainer or that he was negligent in failing to protect the horse from being given the drug. The trainer contended that, since he had a protectable property interest, due process required a presuspension hearing. The court acknowledged the trainer's property interest in his license but held his rights had not been violated:

"We do not agree with Barchi's basic contention, however, that an evidentiary hearing was required prior to the effectuation of his suspension. Unquestionably, the magnitude of a trainer's interest in avoiding suspension is substantial; but the State also has an important interest in assuring the integrity of the racing carried on under its auspices. In these circumstances, it seems to us that the State is entitled to impose an interim suspension, pending a prompt judicial or administrative hearing that would definitely determine the issues, whenever it has satisfactorily established probable cause to believe a horse has been drugged and that a trainer has been at least negligent in connection with the drugging. [Citations.] In such circumstances, the State's interest in preserving the integrity of the sport and in protecting the public from harm becomes most acute. At the same time, there is substantial assurance that the trainer's interest is not being baselessly compromised." 443 U.S. 55, 64-65, 61 L. Ed. 2d 365, 375, 99 S. Ct. 2642, 2649.

We turn to the plaintiffs' contention that the authority given organization licensees under section 9(e) to exclude occupation licensees, as the plaintiffs here, amounted to an unconstitutional delegation of legislative authority. The defendants' response is that the right to exclude does not constitute the delegation of authority but is simply a specific grant of authority under section 9(e) from the legislature.

Further, they say, section 9(e) is simply a codification of a common law right of racetrack owners to exclude persons from the track premises.

A challenge on the ground of improper delegation of legislative power presupposes there has been an attempted grant of some traditional legislative power or authority to an administrative agency or private person. (See generally 1 K. Davis, Administrative Law Treatise §§ 3:1 through 3:18 (2d ed. 1978).) Typically, this question rises where the authority delegated is in effect the power to make law. (See, *e.g., Rouse v. Thompson* (1907), 228 Ill. 522.) It also may be presented when a public body or person has been delegated the power to appoint or to fill vacancies in public office (see, *e.g., People ex rel. Rudman v. Rini* (1976), 64 Ill. 2d 321; *People v. Chicago Transit Authority* (1945), 392 Ill. 77; *State Board of Agriculture v. Brady* (1915), 266 Ill. 592), or when the legislature has authorized an administrative agency or person to execute, in a prescribed manner, some legislative power. See *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287; *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361; *Hill v. Relyea* (1966), 34 Ill. 2d 552.

There is no such delegation of a recognized legislative power here. The right to exclude patrons from a private enterprise, here a racetrack, has long been recognized at common law. (See, *e.g., Marrone v. Washington Jockey Club* (1913), 227 U.S. 633, 57 L. Ed. 679, 33 S. Ct. 401; *Flores v. Los Angeles Turf Club, Inc.* (1961), 55 Cal. 2d 736, 361 P.2d 921, 13 Cal. Rptr. 201; *Tamelleo v. New Hampshire Jockey Club, Inc.* (1960), 102 N.H. 547, 163 A.2d 10; Annot., 90 A.L.R.3d 1361 (1979).) Though it cannot be said that section 9(e), which goes further and permits the exclusion of occupation licensees, is a precise codification of the common law right, it is clear that the authority to exclude here is not derived from some recognized legislative power, unique to the legislature, that has been delegated to organization licensees. It is simply, as the State argues, a grant of

authority by the legislature.

Finally, we consider whether the circuit court had jurisdiction to entertain the plaintiffs' petitions for injunction and, if so, whether the injunctions properly issued.

Speaking generally, one may not seek judicial relief from an administrative action unless he has exhausted all administrative remedies available to him. (See *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358, citing *Myers v. Bethlehem Shipbuilding Corp.* (1938), 303 U.S. 41, 82 L. Ed. 638, 58 S. Ct. 459.) The rationale of this, as described in *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358, is that: "(1) it allows full development of the facts before the agency; (2) it allows the agency an opportunity to utilize its expertise; and (3) the aggrieved party may succeed before the agency, rendering judicial review unnecessary. 2 F. Cooper, State Administrative Law 572-574 (1965); L. Jaffe, Judicial Control of Administrative Action 424-26 (1965); 3 K. Davis, Administrative Law Treatise secs. 20.01—20.10 (1958), and 1970 Supplement at 642-669." There are, however, exceptions to this rule (see, *e.g., Getto v. City of Chicago* (1979), 77 Ill. 2d 346, 356; *Graham v. Illinois Racing Board* (1979), 76 Ill. 2d 566, 573), and the one applicable here provides that a party need not exhaust his administrative remedies when he attacks the constitutionality of a statute on its face. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548.) If, however, the complaint is not that the statute on its face is unconstitutional but rather is that it was applied in a "discriminatory or arbitrary manner," the party must first seek relief through the administrative remedies provided. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552.) Here, the plaintiffs separate petitions for injunction claimed that the authority given an organization licensee to exclude an occupation licensee under section 9(e) without a prior hearing was violative of due process and, further, that it was an unconstitutional delegation of legislative power. This

direct attack on the constitutionality of section 9(e) made it proper for the circuit court to assume jurisdiction and consider the petitions for injunction even though the plaintiffs had not exhausted their administrative remedies under the Illinois Horce Racing Act of 1975 and the Illinois Administrative Procedure Act.

The circuit court here judged, erroneously, that section 9(e) was unconstitutional. It granted the injunctions and these appeals followed. It was proper for the court to consider the petitions for injunction though the administrative remedies available had not been exhausted only because constitutionality was directly challenged. If the circuit court had acted correctly here it would have held section 9(e) to be constitutional, denied the petitions for injunction, and ordered the plaintiffs to follow their administrative remedies. Given our holding that section 9(e) is constitutional, it follows that the plaintiffs must pursue their administrative remedies under the Illinois Horse Racing Act of 1975 and the Illinois Administrative Procedure Act. The injunctions should not have issued. See generally *Withrow v. Larkin* (1975), 421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456.

For the reasons given, the judgments of the circuit court of Madison County are reversed.

*Judgments reversed.*