**Don SERPAS, et al., Plaintiffs,**

v.

**Charles E. SCHMIDT, et al., Defendants.**

No. 82 C 4715.

United States District Court, N.D. Illinois, E.D.

July 11, 1985.

Roger Pascal, Thomas B. Quinn, Marci A. Eisenstein, Jeanne L. Nowaczewski of Schiff, Hardin & Waite, Harvey M. Grossman, of Roger Baldwin Foundation of the ACLU, Inc., Chicago, Ill., for plaintiffs.

Moshe Jacobius, Asst. Atty. Gen., Chicago, Ill., for defendants.

MEMORANDUM OPINION

KOCORAS, District Judge:

This matter comes before the Court on the plaintiffs' motion for summary judgment. Plaintiffs seek an order declaring Illinois' Thoroughbred Rule 322 and Harness Racing Rule 25.19 unconstitutional under the Fourth and Fourteenth Amendments, permanently enjoining defendants from engaging in certain acts under the authority of those Rules, and holding defendants liable for authorizing and conducting unlawful stops and searches. Defendants oppose plaintiffs' motion and request summary judgment in their favor. For the reasons which follow, the plaintiffs' motion is granted in part and denied in part.

The plaintiffs in this action are Don Serpas, Raymond Johnson, and Carl Waters, individually and on behalf of the class of all occupation licensees of the Illinois Racing Board who serve as exercise persons, grooms, and hotwalkers at Illinois racetracks (the plaintiffs).[1] Each named plaintiff lives in residential quarters at Arlington Park Racetrack provided to him in connection with his work. The defendants are former and present members of the Illinois Racing Board, the director of the Illinois Department of Law Enforcement (IDLE), and unknown agents of IDLE. On a motion for a preliminary injunction, the plaintiffs challenged the constitutionality of certain searches conducted under the authority of Thoroughbred Rule 322 and Harness Rule 25.19 (the Rules).[2] The plaintiffs made three arguments against the Rules' application and challenged: (1) the warrantless searches of their residences; (2) the investigatory stops and searches of their persons within the race track enclosure; and (3) the conditioning of their occupation licenses upon their consent to such searches. On June 16, 1983, this Court granted the plaintiffs' motion and preliminarily enjoined the challenged activities. *Serpas v. Schmidt*, Memorandum Opinion (N.D.Ill. June 16, 1983) (hereinafter Mem. Op.).[3]

■ Plaintiffs now move for summary judgment and defendants have made a cross-motion for summary judgment as well. Summary judgment shall be granted when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. The underlying facts and all inferences to

---

**1.** This Court certified these persons as a Rule 23(b)(2) class on September 19, 1983.

**2.** The regulations are set forth in two rules, identical in language, which read as follows:

INSPECTIONS AND SEARCHES

a. The Illinois Racing Board or the state steward investigating for violations of law or the Rules and Regulations of the Board, shall have the power to permit persons authorized by either of them to search the person, or enter and search the stables, rooms, vehicles, or other places within the track enclosure at which a meeting is held, or other tracks or places where horses eligible to race at said race meeting are kept, of all persons licensed by the agents of any race track operator licensed by said Board; and of all vendors who are permitted by said race track operator to sell and distribute their wares and merchandise within the race track enclosure, in order to inspect and examine the personal effects or property on such persons or kept in such stables, rooms, vehicles, or other places as aforesaid. Each of such licensees, in accepting a license, does thereby irrevocably consent to such search as aforesaid and waive and release all claims or possible actions for damages that he may have by virtue of any action taken under this rule. Each employee of a licensed operator, in accepting his employment, and each vendor who is permitted to sell and distribute his merchandise within the race track enclosure, does thereby irrevocably consent to such search as aforesaid and waive and release all claims or possible actions for damages they may have by virtue of any action taken under this rule. Any person who refuses to be searched pursuant to this rule may have his license suspended or revoked.

b. The Illinois Racing Board delegates the authority to conduct inspections and searches, under this rule, to the Chief Investigator of the Illinois Racing Board and to Special Agents of the Illinois Bureau of Investigation, or designees of the Department of Law Enforcement assigned, from time to time, to assist the Chief Investigator in his duties.

**3.** The underlying facts of the action are set out in the preliminary injunction ruling. Mem.Op. at 1–5.

be drawn from them must be viewed in the light most favorable to the party opposing the motion. *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir.1976). A material question of fact is one which is outcome determinative under the governing law. *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983). Whether there is a disputed question of fact to be presented to the trier of fact is, in the first instance, a question of law for the Court to determine.

The legal issues in the action fall into three parts: (1) whether Fourth Amendment protection is afforded plaintiffs during warrantless searches of their living quarters; (2) whether the investigatory stops and searches of the plaintiffs' person while in the race track enclosure are unconstitutional under the Fourth Amendment; and (3) whether the Rules unconstitutionally condition the occupation license on consent to the searches.

## I. *Warrantless Residential Searches*

In issuing the preliminary injunction, this Court placed the burden upon the defendants to show their warrantless residential searches, taken pursuant to the Rules, fell into a recognized exception to the warrant requirement of the Fourth Amendment. *See Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). In opposing the plaintiffs' summary judgment motion, defendants now contest the initial premise that the Fourth Amendment is applicable at all to the plaintiffs' allegations. Defendants assert that the searches take place within the context of the horse racing industry, an industry with such a long history of regulation that "no reasonable expectation of privacy exists within the industry." *United States v. Harper*, 617 F.2d 35 (4th Cir.1980). Therefore, defendants argue, plaintiffs are without any reasonable expectations of privacy and are necessarily outside the scope of Fourth Amendment protection. Defendants rely upon a variety of factors—a long history of warrantless racetrack searches, the public and plaintiffs' knowledge of the searches, and the "commercial" nature of the plain-

tiffs' living quarters. This reliance is misplaced.

Without doubt, defendants accurately assert that horse racing is a highly regulated industry and that the State has an interest in maintaining the industry's integrity. *Phillips v. Graham*, 86 Ill.2d 274, 427 N.E.2d 550 (1981). Moreover, the Supreme Court has clearly recognized that warrantless searches in closely regulated industries can be reasonable. *Donovan v. Dewey*, 452 U.S. 594, 600, 101 S.Ct. 2534, 2538–39, 69 L.Ed.2d 262 (1981). Under this exception to the Fourth Amendment's warrant requirement, courts have found that by accepting the benefits of a highly regulated trade, an individual also accepts the burden of regulation and thereby consents to administrative investigations or inspections. *Marshall v. Wait*, 628 F.2d 1255, 1258 (9th Cir.1980). Therefore, the individual operating within a highly regulated industry can have no reasonable expectation of privacy *as least as to administrative inspections. Id. (emphasis added).*

From this administrative inspection case law, defendants conclude that plaintiffs cannot have a reasonable expectation of privacy in their living quarters located within the racetrack grounds. To accept this conclusion, this Court must accept defendants' necessary first premise—that the warrantless searches of plaintiffs' living quarters are administrative inspections. This court cannot accept the characterization of the residential searches as administrative inspections because: (A) the warrantless searches are conducted on private, residential premises, not commercial premises; (B) the statute's language in this case does not provide an adequate substitute for a warrant; (C) the regulatory scheme present does not provide an adequate substitute for a warrant; and (D) a balance of plaintiffs' privacy interests and the Government's enforcement needs favors the plaintiffs.

### (A) *Residential Nature of Plaintiffs' Quarters*

The administrative inspection exception to the Fourth Amendment's war-

rant requirement extends to commercial or public premises. An administrative search of commercial premises and a warrantless search of a private residence are afforded very different degrees of protection. *Donovan v. Dewey,* 452 U.S. at 598–99, 101 S.Ct. at 2537–38. Defendants acknowledge these differences, but justify the warrantless searches of plaintiffs' living quarters by describing the quarters as commercial premises. Defendants highlight the temporary, cramped, limited nature of the quarters. The rooms are: only provided to employees; adjacent to barns or above horse stalls; accessible by track authorities who have a master key; and very small—providing only one or two person occupancy. No cooking is permitted and some licensees do not choose to stay in the dorm room.

The detailed description of the dorm rooms does not persuade this Court that they qualify as a commercial premise for purposes of the Fourth Amendment. The crucial quality which the rooms possess is their exclusive residential use. *Serpas v. Schmidt,* Mem.Op. at 8–10. The other details of the plaintiffs' living conditions cannot deprive them of their constitutional rights to be free of unreasonable searches in their homes. The courts have viewed rooms similar to plaintiffs' quarters as homes. These rooms include hotel rooms, boarding house rooms, and college dormitory rooms. *See, e.g., Stoner v. State of California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *Smyth v. Lubbers,* 398 F.Supp. 777 (W.D.Mich.1975). Such private rooms have been found to be homes and residences although they share the very qualities the defendants argue make them "commercial": they are small, temporary, and accessible by a master key. The plaintiffs' rooms' proximity to the barns and stalls do not make them commercial; they are used for residential purposes exclusively.

Defendants, however, analogize the warrantless searches of plaintiffs' rooms to the warrantless searches of the baggage of persons boarding airlines, *United States v. Bonstein,* 521 F.2d 459 (2d Cir.1975), *cert.*

*denied* 424 U.S. 918, 97 S.Ct. 1121, 47 L.Ed.2d 324 (1976); of persons entering courtrooms, *McMorris v. Alioto,* 567 F.2d 897 (9th Cir.1978); of prison guards, *United States v. Sihler,* 562 F.2d 349 (5th Cir. 1977); and of a parolee's residence pursuant to a consent provision in his parole terms, *United States v. Dally,* 606 F.2d 861 (9th Cir.1979). These cases do not change the nature of the plaintiffs' quarters. The cases generally involve searches on public property—an airport, a courtroom, a prison. The search of a parolee in *Dally* was governed by the terms of a search consent which was a condition of a prisoner's parole. The *Dally* search was not characterized as an administrative inspection. Plaintiffs' situation is not analogous to individuals on parole from prison.

■ Therefore, the plaintiffs' living quarters are residential, not commercial. Their temporary and crowded conditions do not change their nature. Although employed in a highly-regulated industry, the plaintiffs possess the constitutional right to be from unreasonable searches in their homes.

### (B) *Statutory Authority for the Searches*

■ In other highly regulated industries, warrants are not required where statutory language authorizes the terms and conditions of searches of particular premises. *Donovan v. Dewey,* 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (mining industry); *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (gun dealers); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (liquor industry). The applicable statute in the Illinois horse racing industry reads, in pertinent part:

(c) The Board, and any person or persons to whom it delegates this power, is vested with the power to enter the office, horse race track, facilities and other places of business of any organization licensee to determine whether there has

been compliance with the provisions of this Act and its rules and regulations. Illinois Horse Racing Act of 1975, 8 Ill. Ann.Stat. § 37–9 (Smith-Hurd Supp.1980).

Defendants argued earlier and again urge the Court to find that the terms "race track" and "facilities" must include the dormitory rooms. Such a conclusion is said to be dictated by the track's ownership of the rooms, the rooms' location within the racetrack, the track's accessibility to the room for health and safety inspections, and the track's provision of the rooms to licensees at no charge. Defendants' Memo. at 19–20. None of these allegations change the exclusive residential nature and purpose of the rooms themselves.

Nor does the language of the statute support defendants' conclusion that the rooms are a "facility" or a "racetrack." The sentence specifically lists a series of places and ends with the general phrase— "and other places of business...." This concluding phrase labels the earlier places as places of business. The most reasonable reading of "facility" or "racetrack" within the sentence is to find that they are examples of places of business. Therefore, as this Court found earlier, there is "a complete dearth of statutory authorization for searches of residences or statutory limitations on any searches." Therefore, this Court "will not authorize what the legislature has not." Mem.Op. at 17.

### (C) *Regulatory Powers as Authority for the Searches*

■ In the absence of specific statutory authority, the defendants argue that the power to conduct the warrantless searches of plaintiffs' living quarters may be inferred or implied from the broad regulatory powers of the Illinois Racing Board. Defendants rely upon *Balelo v. Baldridge,* 724 F.2d 753, 765 (9th Cir.1984), to argue that the Board has been given extensive regulatory powers from which the power to search may be inferred. Other courts have viewed a warrantless administrative search as permissible *only* when the search is specifically authorized by a statute. *See, e.g., United States v. Biswell,* 406 U.S. 311,

315, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972); *Bionic Auto Parts and Sales, Inc. v. Fahner,* 721 F.2d 1072, 1078 (7th Cir. 1983). This Circuit does not appear to recognize implied statutory authority for warrantless administrative searches. Even if this Circuit should determine to recognize inferred authority, the regulatory scheme in this case is inadequate.

Under *Balelo,* to determine whether warrantless searches in a closely regulated industry are reasonable, the court "must decide whether the regulatory scheme 'in terms of the certainty and regularity of its application, provides a constitutionally adequate substitute for a warrant.'" *Balelo v. Baldridge,* 724 F.2d at 765–66, *quoting in part, Dewey v. Donovan,* 456 U.S. at 603, 101 S.Ct. at 2540. The *Balelo* court found that a program of observers of fishing vessels, which collected data pursuant to the Marine Mammal Protection Act, was sufficiently regulated to provide an adequate substitute for a warrant. The court based its decision on several grounds: published regulations which clearly defined the objective and purpose of the observer; regulations which limited the scope of the observer's activities; written manuals to define the observer's role; standardized forms to record observations; advance notice to the vessel's owner of an observer's presence; a pre-departure conference; and the manual's specific limits which "do not authorize the observers to conduct searches of the persons, personal effects, or living quarters of the Captains and their crews." *Balelo v. Baldridge,* 724 F.2d at 767. Moreover, no alternative method of enforcement existed aboard the vessel. *Balelo v. Baldridge,* 724 F.2d at 768 (Nelson, J., concurring).

The defendants urge the Court to find that the Board's regulatory scheme offers similar "certainty and regularity" of application and provides an adequate substitute for a warrant. In contrast to the *Balelo* regulations, however, the agents who conduct the living quarters' searches are not given written manuals, but "given instructions" on "how to carry out the searches."

No further details of the nature of the instructions are offered. The search procedures include: having the agent identify himself; signing a written consent form or where no consent is given, the individual is reported to the steward; and providing individuals with a receipt if the agents take any property. Generally, rooms are searched only when an occupant is present and the agent has permission to enter.

These practices, however, do not impose any meaningful limitations on the agents' discretion. The searches may be focused or random and are not restricted to particular times nor restricted to particular areas or items in those areas which are in plain view. Unlike the observers in *Balelo*, the agents here may search plaintiffs' living quarters and personal effects as extensively as they wish. Plainly, the agents have an unrestricted scope of search; requiring them to hand out receipts or consent forms does not affect or limit the agent's discretion to undertake an exhaustive search of every personal effect in an individual's room. These practices fall short as an adequate substitute for a warrant.

### (D) *Balance of Privacy Interests and Enforcement Interests*

■ In determining the reasonableness of a warrantless search, the Court must balance the enforcement needs of the government and the privacy interest of the plaintiffs. *See, e.g., Marshall v. Barlow's Inc.*, 436 U.S. 307 at 321, 98 S.Ct. 1816 at 1825, 56 L.Ed.2d 305. The plaintiffs' interest is strong. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed...." *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134–35, 32 L.Ed.2d 752 (1972). Because of the constitutional protection afforded the home, the warrant requirement has been strictly applied to searches of the home. *Illinois Migrant Council v. Pillod*, 531 F.Supp. 1011, 1021 (N.D.Ill.1982). Therefore, governmental authorities may not search the home without a warrant showing probable cause unless there are exigent circumstances. *Id.* at 1022. In *Camara v. Municipal Court*, the Court found that administrative warrants could authorize searches of dwellings for building code violations. 387 U.S. at 537–40, 87 S.Ct. at 1735–36. The Court articulated several factors which made the search reasonable, including: public interest in preventing or abating dangerous conditions; the history of such inspections; good alternate techniques to discover violations were not available; the searches were not personal in nature; and the searches were not directed toward discovering evidence of a crime. 387 U.S. at 536–37, 87 S.Ct. at 1734–35.

■ The defendants contend that although plaintiffs' privacy interests are great, the government's enforcement needs are greater. They argue the warrantless residential searches are reasonable and cite the long history of such warrantless searches in Illinois and elsewhere. But, primarily, defendants' arguments are focused on the public and the State's interests in maintaining the integrity of the horse racing industry—an industry prone to abuse by "undesireable elements." *Feliciano v. Illinois Racing Board*, 110 Ill. App.3d 997, 66 Ill.Dec. 578, 443 N.E.2d 261 (1st Dist.1982). Specifically, defendants justify the warrantless searches because they serve as deterrents to violations, are justified by the "positive results"—contraband found during searches, and because less intrusive methods would be ineffective.

The deterrent effects of the searches cannot render them constitutional. Proof of such deterrence is speculative. The statistics of positive results from searches of the plaintiffs do not readily support the defendants' position. During 1981–1983, there were 361 reported searches of the plaintiffs' residences and persons. The stated purpose of such searches is to find illegal "buzzers" and drugs which could affect the results of the horse race. There appear to be approximately seven searches which produced these items. Affidavit of Leonard Becika, Exhibits A, B, C. These statistics do not justify the warrantless searches. While the individual character

and integrity of the Board's licensees may reflect upon the character of the horse racing industry, this does not justify warrantless residential searches to insure that licensees possess no drugs used by humans in their homes.

The defendants also contend that these unannounced warrantless searches are the most effective method of enforcement and that other less intrusive methods would be ineffective. The element of surprise is deemed crucial to enforcement. The element of surprise and a warrant to search, however, may co-exist in an *ex parte* warrant. *Marshall v. Barlow's Inc.*, 436 U.S. at 319–20, 98 S.Ct. at 1824. This alternative would accommodate enforcement needs and the plaintiffs' privacy rights. The rest of defendants' enforcement scheme does not involve warrantless searches and can prevent the wrongs they seek to prevent. Defendants may continue to detain horses and conduct metal detector searches of them before the race, make searches of the commercial premises of the racetrack, and use drug testing techniques.

The defendants' enforcement needs do not outweigh the plaintiffs' privacy interests. The additional *Camara* factors—that the search not be personal in nature nor directed towards discovery of criminal evidence—are plainly not present here. Therefore, having considered both parties' interests fully, this Court finds the plaintiffs' privacy interest is superior and renders the warrantless searches of their homes unreasonable under the Fourth Amendment.

## II. *Stops and Searches of Plaintiffs' Persons*

■ The plaintiffs have also challenged the warrantless investigative stops and searches of their persons, which take place anywhere within the racetrack enclosure. Defendants argue that these searches, like the residential searches, are sanctioned under the administrative search exception to the Fourth Amendment. Once again, defendants have the burden of showing statutory authority or even implied statutory authority for the warrantless searches. The statute authorizes the search of "facilities" and other commercial premises, but nowhere is there authorization for the search, not of a place, but of a person.[4] There is no statutory authority for the searches nor any limits placed on the searchers' discretion. The "orders" and procedures of the agents do not supply the requisite limits on discretion. *See supra*, at 9–12.

■ Moreover, as Judge Prentice Marshall noted in *Illinois Migrant Council v. Pilliod*, the Supreme Court has stated that administrative warrants authorize searches of commercial premises or property only—not the search of persons found on the premises. 531 F.Supp. 1011, 1020–21 (N.D. Ill.1982). Finally, this Court has distinguished this case from *Willey v. Illinois Racing Board, et al.*, 74 C 3524, *aff'd*, 423 U.S. 802, 96 S.Ct. 9, 46 L.Ed.2d 23 (1975), and there are no reported opinions which permitted administrative searches of commercial premises and warrantless searches of licensees on the premises. Mem.Op. at 18–23.

## III. *Conditioning License on Consent*

■ The plaintiffs' last challenge is directed to the conditioning of their occupation licenses upon their consent to be searched. Defendants argue that the plaintiffs have voluntarily consented to the searches by signing a statement to abide by Board Rule 332 and 25.19, which are printed on the application form. The defendants rely upon the doctrine of implied consent—that when plaintiffs entered their occupation, they agreed to abide by the industry's regulation. This Court has found, however, that the issue is not whether consent can be implied, but whether, absent the condition, the challenged searches are constitutional. Mem.Op. at pp. 23–28. Standing alone, the searches of

---

**4.** Section 37–9(a) grants the Board jurisdiction over "all persons on organizational grounds." Section 37–9(d) authorizes the Board to "investigate alleged violations of the provision of this Act." Neither of these constitute authorization of the warrantless search of persons.

the residences and persons have been found to be unconstitutional because they violate plaintiffs' Fourth Amendment rights. Because these searches are unconstitutional, the license applications requiring consent to such searches are also unconstitutional. The Racing Board cannot issue a license conditioned on the applicant's consent to waive his or her Fourth Amendment protections. *Frost v. Railroad Commission,* 271 U.S. 583, 592–594, 46 S.Ct. 605, 606–07, 70 L.Ed. 1101 (1926).

Defendants argue, however, that the question of consent by plaintiffs raises a disputed question of material fact which bars plaintiffs' motion for summary judgment. The facts demonstrate that plaintiffs' signature and compliance was motivated by their fear of losing the license and the livelihood that could be available to them only through that license.[5] The forms cannot make reasonable the warrantless searches of plaintiffs' persons and homes. *Schneckcloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

## IV. *Requirements for Permanent Injunction*

■ To gain injunctive relief, the plaintiffs must demonstrate that they have no adequate remedy at law and will suffer irreparable harm without an injunction. The plaintiffs have shown that in the absence of permanent injunction, they will continue to have their homes and persons searched without a warrant. Fourth Amendment violations have been deemed "irreparable harm" for purposes of gaining injunctive relief. *Illinois Migrant Council v. Pillod,* 531 F.Supp. 1011, 1023 (N.D.Ill. 1982). Additionally, the public has an interest in securing the plaintiffs' constitutional rights. The defendants will retain their full complement of enforcement procedures and will only be precluded from making unlawful searches and seizures. Therefore, plaintiffs have demonstrated that they are entitled to permanent injunctive relief.

## V. *Defendant's Liability for Unlawful Acts*

Plaintiffs seek to have this Court hold defendants liable for authorizing and conducting the unlawful stops and searches of the named plaintiffs. Summary judgment is sought only on the issue of liability, not damages. Both parties agree that the applicable law of government official's qualified immunity is set out in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court stated: "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether the law was clearly established at the time."

■ To establish this qualified immunity as an affirmative defense, the defendants must demonstrate that the searches of the named plaintiffs were authorized when they were made. The standard requires the defendants to establish that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants argue that the law of warrantless administrative investigations in closely regulated industries plainly authorized their searches. Reasonable people could have concluded they had the authority to conduct the searches. *Donovan* and *Camara* permitted administrative searches and defendants could have believed there were sufficient limits on the discretion of those conducting the search. Therefore, this court holds the defendants are not liable for authorizing and conducting the unlawful stops and searches of the named plaintiffs.

## VI. *Discovery Sanctions*

■ Defendants have asked this Court to dismiss plaintiffs' action because plaintiffs failed to answer discovery demands. Plaintiffs invoked the Fifth Amendment in response to defendants' interrogatories about plaintiffs' possession or use of

---

**5.** Disputes over when consent for a single, particular search was given or what precise items were searched are not material questions of fact.

equine drugs, buzzers or mechanical devices, and cocaine or marijuana. Defendants assert that the information is requested to show the need for their searches and to develop a possible equitable defense of unclean hands. At a minimum, defendants ask the Court to dismiss plaintiffs' damages claim.

Without addressing the necessity or relevance of the evidence requested, this Court finds that the plaintiffs' invocation of the Fifth Amendment does not warrant the extreme remedy of dismissal. Case law indicates that dismissal is an option only where the invocation of the right is improper and pretextual and the plaintiff has refused the court's order compelling discovery. *See, e.g., Campbell v. Gerrans,* 592 F.2d 1054, 1057–58 (9th Cir.1979). Neither element is present here; plaintiff's invocation is not improper and no court order issued. Plaintiffs have replied to discovery completely with this exception. Defendants are not entitled to dismissal.

### VII. *Scope of the Injunction*

The defendants also raise an issue concerning the scope of this Court's injunction, if it issued. The plaintiffs seek relief against the named defendants and this Court's injunction binds them and "those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed.R.Civ.P. 65(d). At this time, the Court grants the injunction against the named defendants.

### VIII. *Probable Cause Requirement*

In its earlier decision, this Court conducted an extensive analysis of *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and concluded that under its rationale, an administrative warrant would be inappropriate and that defendants must procure a warrant based upon "the more vigorous standard of 'probable cause' used in criminal cases." Mem.Op. at 29–37. At that time, the Court indicated that it would entertain a motion to modify the type of warrant required if further evidence were forthcoming. The evidence developed during discovery has not disturbed the Court's initial findings. Therefore, the Court finds that: (1) the harm resulting from violations of racing requirements is not comparable to the harm from "an epidemic or an uncontrollable blaze" in *Camara;* (2) there is no showing that defendants will be unable to regulate the industry effectively if probable cause is required for a warrant; (3) there are important privacy interests at stake and the searches are personal and aimed at discovery of criminal evidence; (4) there are no "reasonable legislative or administrative standards" for the searches. *See supra* at 8–12.

For the foregoing reasons the Court declares: that Thoroughbred Rule 322 and Harness Racing Rule 25.19 are unconstitutional under the Fourth and Fourteenth Amendments to the United States Constitution.

The Court permanently enjoins defendants from engaging in these acts pursuant to the Rules:

a. Conducting or authorizing searches and seizures of the persons and residential quarters of plaintiffs and the class they represent without warrants and probable cause;

b. Conducting or authorizing investigatory stops of plaintiffs and the class they represent without at least a reasonable suspicion, based on specific, articulable facts, that the person stopped is engaged in criminal activity; and

c. Conditioning the issuance of occupation licenses upon applicants' forfeiture of their constitutional right to be free from the searches authorized by Rules 322 and 25.19.

Finally, this Court holds that defendants are not liable to the named plaintiffs for authorizing and conducting unconstitutional searches of named plaintiffs' persons and residences.