THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RICHARD STRAUSS, Defendant-Appellee.

First District (4th Division)   No. 85—1381

Opinion filed December 31, 1986.—Rehearing denied January 26, 1987.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Paula Carstensen, Assistant State's Attorney, of counsel), for the People.

Thomas J. Royce and Kent R. Carlson, both of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

The State appeals from the trial court's order granting the motion to suppress filed by defendant, Richard Strauss. The State makes the following arguments: (1) the provisions of Thoroughbred Rule 322 and Harness Rule 25—19, which authorized warrantless searches of race-track licensees, are constitutionally permissible under the administrative-search exception to the fourth amendment to the United States Constitution; (2) defendant's fourth amendment rights were not violated when he, a jockey, has no reasonable expectation of privacy, given the highly regulated nature of the sport of horse racing; and (3) he consented to the warrantless search of his person when he obtained a jockey's license from the Illinois Racing Board.

We reverse.

The record shows that on May 7, 1984, defendant was charged by indictment with the unlawful use of a mechanical appliance, in that he had in his possession, in the paddock area of Sportsman's Park racetrack, an appliance which might and could be used for the purpose of stimulating a horse and affecting its speed (an electrical buzzer/prodder device), in violation of the Illinois Horse Racing Act of 1975 (hereinafter the Act) (Ill. Rev. Stat. 1983, ch. 8, par. 37—37(a)(3)). In his pretrial motion to suppress evidence, defendant alleged that the search of his person by racetrack officials prior to a race was illegal and the administrative rules (Thoroughbred Rule 322 and Harness Rule 25.19), promulgated by the Illinois Racing Board (IRB) authorizing such searches, are unconstitutional.

Defendant is a free-lance jockey, licensed by the IRB. When defendant received his jockey's license, he signed a consent-to-search form as required by the IRB's Thoroughbred Rule 322 and Harness Rule 25.19. These rules authorized racetrack officials to search persons licensed by the IRB at any time while within the confines of the racetrack premises.

On April 21, 1984, Robert Hart, the director of pari-mutuels at Sportsman's Park racetrack, was informed that a suspicious betting pattern at windows 0001-0006 had been detected, which involved the number four horse to be ridden by jockey Strauss in the second race.

Hart notified Charles Bickwell, Jr., the president of Sportman's Park, who then informed the State steward. The State steward thereafter requested Sportsman's Park security to conduct a search of jockey Strauss.

At approximately 2 p.m. on April 21, 1984, Investigator Gene Oliver of Sportsman's Park security and Jack Hollaran, his partner, in the company of the jockey's representatives, Stanley Spenser and Ronnie Hirdes, conducted a pat-down search of the person of jockey Strauss on the stairway of the paddock area. Investigator Oliver recovered an electrical prodder device from defendant's wrist.

After arguments were heard, the trial court ruled that Thoroughbred Rule 322 and Harness Rule 25—19 are unconstitutional because they authorized searches to be made without probable cause. It is from that ruling that the State appeals.

Before we address the State's arguments, we note that neither party argues that the search was proper or improper under the State Constitution. Thus, we will not, in this opinion, address this issue. We also note that we do not decide whether Thoroughbred Rule 322 is constitutional on its face. Our decision is limited to the particular facts of this case as they apply to defendant. Lastly, we decline to follow the holding and reasoning of *Serpas v. Schmidt* (N.D. Ill. 1985), 621 F. Supp. 734. The court in *Serpas* held that Thoroughbred Rule 322 and Harness Rule 25—19 are unconstitutional for various reasons. We are more inclined to follow *Shoemaker v. Handel* (3rd Cir. 1986), 795 F.2d 1136, and its related cases, which are in conflict with the decision in *Serpas*. Our reasoning in the case at bar is substantially derived from *Shoemaker v. Handel* and its related cases.

The State first argues that Thoroughbred Rule 322, which provides that licensees of the IRB may be subject to warrantless searches, is constitutionally permissible under the administrative-search exception to the fourth amendment. We agree.

Thoroughbred Rule 322, promulgated by the IRB, reads as follows:

> "The Illinois Racing Board or the state steward investigating for violations of law or the Rules and Regulations of the Board, shall have the power to permit persons authorized by either of them to search the person, or enter and search the stables, rooms, vehicles, or other places within the track enclosure at which a meeting is held, or other tracks or places where horses eligible to race at said race meeting are kept, of all persons licensed by the Board, and of all employees and agents of any race track operator licensed by said Board; and of all vendors who are permitted by said race track operator to sell and distrib-

ute their wares and merchandise within the race track enclosure, in order to inspect and examine the personal effects or property on such persons or kept in such stables, rooms, vehicles, or other places as aforesaid. Each of such licensees, in accepting a license, does thereby irrevocably consent to such search as aforesaid and waive and release all claims or possible actions for damages that he may have by virtue of any action taken under this rule. Each employee of a licensed operator, in accepting his employment, and each vendor who is permitted to sell and distribute his merchandise within the race track enclosure, does thereby irrevocably consent to such search as aforesaid and waive and release all claims or possible actions for damages they may have by virtue of any action taken under this rule. Any person who refuses to be searched pursuant to this rule may have his license suspended or revoked." 11 Ill. Admin. Code ch. 1, sec. 1325.190 (1985).

The Illinois Racing Board and stewards are charged by law with regulating horse racing in Illinois, pursuant to the Act (Ill. Rev. Stat. 1983, ch. 8, par. 37—1). The IRB is a department of State government and its members are executive officers appointed by the Governor. Ill. Rev. Stat. 1983, ch. 8, par. 37—4.

■ As indicated, a search was made of defendant's person without a warrant. Normally, in order to conduct a search of one's person, the authority must have a warrant. (*Payton v. New York* (1980), 445 U.S. 573, 586, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380.) However, as stated in *Shoemaker v. Handel* (D.N.J. 1985), 608 F. Supp. 1151, an exception to the search warrant requirement has been recognized for "pervasively regulated businesses" and for "closely related" industries "long subject to close supervision and regulation." (608 F. Supp. 1151, 1155, citing *United States v. Biswell* (1972), 406 U.S. 311, 316, 32 L. Ed. 2d 87, 92, 92 S. Ct. 1593, 1596; *Colonnade Catering Corp. v. United States* (1970), 397 U.S. 72, 77, 25 L. Ed. 2d 60, 64-65, 90 S. Ct. 774, 777.) As the *Shoemaker* court further stated:

"These cases are indeed exceptions, but they represent responses to relatively unique circumstances. Certain industries have such a history of government oversight that no reasonable expectation of privacy *** could exist for a proprietor over the stock of such an enterprise. Liquor (*Colonnade*) and firearms (*Biswell*) are industries of this type: when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation.

Industries such as these fall within 'certain carefully defined

classes of cases,' referenced in *Camara*, 387 U.S., at 528, 87 S. Ct., at 1731. The element that distinguishes these enterprises from ordinary businesses is a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware *** businessmen engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade ***. The businessman in a regulated industry in effect consents to the restrictions placed upon him. *Marshall, supra* 436 U.S. at 313, 98 S. Ct. at 1821." *Shoemaker v. Handel* (D.N.J. 1985), 608 F. Supp. 1151, 1155-56.

■ In Illinois, horse racing is a highly regulated industry and the State has a substantial interest in maintaining the industry's integrity. (*Phillips v. Graham* (1981), 86 Ill. 2d 274, 286, 427 N.E.2d 550, 555.) Moreover, the industry has been subject to pervasive and long-standing regulation. Thus, we conclude that in Illinois, in general, a reasonable warrantless search in a regulated industry falls within the administrative-exception rule stated above.

■ Next, we must determine whether the administrative-search-exception rule extends to the warrantless pat-down search of a jockey's person within the track enclosure. Before the administrative-search exception will be extended to a search of one's person, the following elements must be present: (1) a strong State interest in conducting an unannounced search and (2) the pervasive regulation of the industry must have reduced the justifiable privacy expectation of the subject of the search. (*Shoemaker v. Handel* (3rd Cir. 1986), 795 F.2d 1136, 1142.) We find that both of these elements are present in this case.

Illinois has had and continues to have a vital interest in assuring the public of the integrity of persons engaged in the horse racing industry. (*Phillips v. Graham* (1981), 86 Ill. 2d 274, 286, 427 N.E.2d 550, 555.) As the court stated in *Phillips*, "It is a truism to say that the horse-racing industry depends upon public confidence in the sport and upon integrity and professional efficiency in its operation. A review of the Horse Racing Act and its comprehensive and detailed list of statutory requirements discloses the legislature's interest in imposing strict controls on an industry which on occasion has been vulnerable to dishonest men and practices." (86 Ill. 2d 274, 286, 427 N.E.2d 550, 553.) Because of the past problems with the horse racing industry as indicated in the preceding quote and the wagering which accompanies horse racing, this State has a strong interest in conducting an unannounced pat-down search of a jockey's person within the track enclosures.

■ As to the justifiable privacy expectation, jockeys are well aware that horse racing in Illinois is extensively and pervasively regulated and, as a result, their justifiable privacy expectation is substantially reduced when they are within the track enclosure. Furthermore, it has been stated in several cases that no reasonable expectation of privacy exists within an industry such as horse racing which has a history of strong governmental oversight. (*Shoemaker v. Handel* (3rd Cir. 1986), 795 F.2d 1136; *Marshall v. Wait* (9th Cir. 1980), 628 F.2d 1255, 1258; *United States v. Harper* (4th Cir. 1980), 617 F.2d 35, 38.) As the court determined in *Marshall v. Wait*, an individual engaged in a heavily regulated industry has no expectation of privacy because he is put on notice of the likelihood of unannounced, nonconsensual, warrantless inspections by both the history and degree of regulation. By accepting the benefits of the trade, the entrepreneur also accepts the burden of regulation and thereby consents to the necessity of inspection. (*Marshall v. Wait* (9th Cir. 1980), 628 F.2d 1255, 1258.) This holding from *Marshall* equally applies to jockeys in the horse racing industry when they are within the track enclosure.

■ The conclusion that jockeys in Illinois while in the confines of the racetrack have a minimal privacy expectation is further buttressed by the fact that a jockey in Illinois is notified of the unannounced search policy when he applies for his racing license. Furthermore, all persons who are licensed by the IRB are provided with a copy of Thoroughbred Rule 322 and they are required to sign a consent-to-search form. Thus, we conclude that because the IRB has exercised its regulatory authority in ways that have substantially reduced the justifiable privacy expectation of jockeys, and jockeys signed consent forms that put them on notice of possible warrantless searches, a jockey's privacy expectation while within the track enclosure is minimal. See *Shoemaker v. Handel* (3rd Cir. 1986), 795 F.2d 1136 (and its related cases).

■ Finally, we must determine whether the warrantless search of defendant's person was reasonable under the circumstances. Whether a search is conducted in an unreasonable manner is a matter to be determined in light of the circumstances of the particular case. *Shoemaker v. Handel* (D.N.J. 1985), 619 F. Supp. 1089, 1100.

■ Regulatory officials, as government agents, must act reasonably in their discretion, thereby safeguarding "the privacy and security of individuals against arbitrary invasions." (*Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 312, 56 L. Ed. 2d 305, 311, 98 S. Ct. 1816, 1820, quoting *Camara v. Municipal Court* (1967), 387 U.S. 523, 528, 18 L. Ed. 2d 930, 935, 87 S. Ct. 1727, 1730.) The test of reasonableness is not capable of precise definition or mechanical application. In each

case, it requires a balancing of the need of the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted. *Bell v. Wolfish* (1979), 441 U.S. 520, 559, 60 L. Ed. 2d 447, 481, 99 S. Ct. 1861, 1884.

First, we note, as above, that as a jockey, defendant's justifiable privacy expectation is minimal while within the track enclosure. Next, defendant experienced a pat-down search. In the areas where a distinction has been drawn between the various types of searches of one's person, the border-search cases, the pat-down search is considered the least intrusive type. See *United States v. Des Jardins* (9th Cir. 1984), 747 F.2d 499; *United States v. Couch* (9th Cir. 1982), 688 F.2d 599; *United States v. Grayson* (9th Cir. 1979), 597 F.2d 1225, *cert. denied* (1979), 444 U.S. 875, 62 L. Ed. 2d 102, 100 S. Ct. 157; *United States v. Palmer* (9th Cir. 1978), 575 F.2d 721, *cert. denied* (1978), 439 U.S. 875, 58 L. Ed. 2d 189, 99 S. Ct. 212.

Because a pat-down search is not considered an extensively intrusive search of one's person, the court in the border-search cases requires only that a "minimal showing of suspicions" be present to justify a pat-down search. (*United States v. Des Jardins* (9th Cir. 1984), 747 F.2d 499, 504.) Due to the reduced expectation of privacy of jockeys while within the track enclosure and a history of pervasive regulation in the horse racing industry, we believe the rationale for making a distinction between the type of searches of one's person in the border-search cases equally applies to the search of the jockey's person within the track enclosure.

■ Lastly, we note that this particular search occurred within the track enclosure and occurred only after racetrack officials noticed irregular betting patterns on the horse that defendant was riding. Thus, we conclude that based on the facts of this case the warrantless search of defendant's person was reasonable under the circumstances.

We need not address the State's remaining arguments since we conclude that the search of defendant's person was valid under the administrative-search-exception rule.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and this cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

McMORROW and JIGANTI, JJ., concur.