WARREN J. HANSEN, Plaintiff-Appellee, v. THE ILLINOIS RACING BOARD et al., Defendants-Appellants.

First District (3rd Division) No. 88—1094

Opinion filed February 8, 1989.

354

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Karen Michels Caille, Assistant Attorney General, of Chicago, of counsel), for appellants.

Lawrence Jay Weiner and Joan M. Eagle, both of Schwartz & Freeman, of Chicago, for appellee.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Illinois Racing Board (Board), appeals from an order of the circuit court of Cook County on administrative review which declared Illinois Racing Board Rule 25.19 (11 Ill. Adm. Code 1325.190 (1985)) unconstitutional on its face. The circuit court's order reversed the order of the Illinois Racing Board which had suspended the occupation license of plaintiff, Warren J. Hansen, for violation of the rule, for refusing to consent to a search of a pick-up truck allegedly within Hansen's control at the Quad Cities Downs Race Track.

On appeal defendant contends that the trial court erred in finding Rule 25.19 unconstitutional on its face, since the rule provides for a constitutionally permissible warrantless administrative search within the administrative search exception to the fourth amendment. In addition, defendant argues in the alternative that if the circuit court was correct in finding the rule unconstitutional, the trial court erred in awarding plaintiff attorney fees and costs under section 14.1(b) of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1987, ch. 127, par. 1014.1(b)).

For the reasons stated below, we affirm the judgment of the circuit court.

The record indicates that plaintiff had been licensed by the defendant Board since 1981 as a driver, trainer, and owner of standard bred horses. Joseph Hofmann, an Illinois Department of State Police agent assigned to Quad Cities Downs Racetrack, testified before the Board that on May 24, 1987, between 11 a.m. and 1 p.m., he received a telephone call at his police office in East Moline. The phone call was from an informant who told Hofmann that Warren Hansen had two syringes on his person and that Hansen took those two syringes and put them in his pick-up truck. Hofmann knew that plaintiff had two horses to race that day at Quad Cities Downs. At around 4:30 p.m., Hofmann went to Hansen's horse barn area on the backstretch of Quad Cities Downs. Hofmann knew that plaintiff had a horse in the eighth race and that the horse had been "specialed," that is, that a urine sample was taken. Hansen arrived in the barn area around 4:45 p.m. Hofmann then observed a woman approach a red and white pick-up truck parked near the barn. Hofmann asked if she was Mrs. Hansen, and when she replied affirmatively, Hofmann asked her to return to the barn area. Hofmann was accompanied by the as-

sistant steward of Quad Cities Downs Racetrack and the backstretch director of security.

When Hofmann and the others entered the barn, plaintiff and two other men were present. Hofmann identified himself as a police officer and requested permission to conduct an Illinois Racing Board administrative tack search. Plaintiff asked what an administrative search was, and Hofmann responded that it was a search of everything that was under plaintiff's control at Quad Cities Downs. Plaintiff consented to the search and signed the Illinois State Police consent-to-search waiver form. Hofmann then searched plaintiff's person and plaintiff's tack boxes, feed room, and equipment. Nothing was discovered. Hofmann then requested to search the pick-up truck. Hofmann testified that he had seen plaintiff driving in the red and white truck onto the Quad Cities Downs backstretch area previously, and also that he had never seen plaintiff driving any other vehicle at Quad Cities Downs. Plaintiff refused to consent to a search of the truck, stating that he did not own it and he would not consent to a search of something he did not own. Plaintiff stated that the truck was registered to either his mother or his father. Hofmann asked plaintiff's wife for permission to search the truck, which permission she denied.

Hofmann then went to a telephone in or near the barn and called the racetrack's senior steward, advising him of what had happened and that plaintiff refused to consent to a search of the truck. The steward asked to speak to plaintiff. The steward asked plaintiff if he would consent to the search and plaintiff responded negatively. Hofmann again spoke with the steward, who advised Hofmann that the proper procedure was not to search the truck. He advised Hofmann to return to his vehicle and run a license plate check of the truck, which Hofmann did. The check revealed that the vehicle was registered to plaintiff's father.

On June 5, 1987, the stewards of Quad Cities Downs suspended plaintiff's license as a driver and trainer of standard bred race horses for one year for refusing to allow the search of the truck under his control. After a hearing, the Board found that plaintiff's refusal to consent to the search violated Rule 25.19, promulgated under the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1987, ch. 8, par. 37—1 *et seq.*). Plaintiff thereafter filed a complaint for administrative review in the circuit court. The circuit court reversed the order of the Board, finding the statute unconstitutional on its face. The court also awarded plaintiff $10,625 in fees and $151.80 in costs.

Initially we address defendant's contention that the circuit court erred in holding Rule 25.19 unconstitutional on its face. Section 9(b)

of the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1987, ch. 8, par. 37—9(b)) grants the Illinois Racing Board "full power to promulgate reasonable rules and regulations for the purpose of administering the provisions of this Act." Pursuant to its authority under section 9, the Board promulgated Rule 25.19, which provides in pertinent part:

> "(a) The Illinois Racing Board or the state steward investigating for violations of law or the Rules and Regulations of the Board, shall have the power to permit persons authorized by either of them to search the person, or enter and search the stables, rooms, vehicles, or other places within the track enclosure at which a meeting is held, or other tracks or places where horses eligible to race at said race meeting are kept, of all persons licensed by the Board, and of all employees and agents of any race track operator licensed by said Board; and of all vendors who are permitted by said race track operator to sell and distribute their wares and merchandise within the race track enclosure, in order to inspect and examine the personal effects or property on such persons or kept in such stables, rooms, vehicles, or other places as aforesaid. Each of such licensees, in accepting a license, does thereby irrevocably consent to such search as aforesaid and waive and release all claims or possible actions for damages that he may have by virtue of any action taken under this rule. Each employee of a licensed operator, in accepting his employment, and each vendor who is permitted to sell and distribute his merchandise within the race track enclosure, does thereby irrevocably consent to such search as aforesaid and waive and release all claims or possible actions for damages they may have by virtue of any action taken under this rule. Any person who refuses to be searched pursuant to this rule may have his license suspended or revoked." 11 Ill. Adm. Code 1325.190 (1985).

The Board rule must be read in view of the prohibition in the fourth amendment to the United States Constitution against unreasonable searches and seizures. This prohibition applies to commercial premises. (*New York v. Burger* (1987), 482 U.S. 691, 96 L. Ed. 2d 601, 107 S. Ct. 2636.) The protection afforded by the fourth amendment corresponds to the reasonable expectation of privacy of the person whose property or person is subject to a search. The Supreme Court has stated that "[a]n owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable." (*New York v. Burger* (1987), 482 U.S. 691, 699, 96 L. Ed. 2d 601, 612, 107 S. Ct. 2636, 2642, citing

*Katz v. United States* (1967), 389 U.S. 347, 361, 19 L. Ed. 2d 576, 587, 88 S. Ct. 507, 516 (Harlan, J., concurring).) The courts have recognized that there is a reduced expectation of privacy by an owner of commercial premises in an industry that has been closely regulated by the government, such as the liquor and firearms industries. (See *Colonnade Catering Corp. v. United States* (1970), 397 U.S. 72, 25 L. Ed. 2d 60, 90 S. Ct. 774; *United States v. Biswell* (1972), 406 U.S. 311, 32 L. Ed. 2d 87, 92 S. Ct. 1593.) Specifically regarding the horse-racing industry, the Illinois Supreme Court has stated:

"Wagering or gambling is an activity which is 'subject to regulation or to complete prohibition' [citation] and one in which the State's interest in protecting the public from dishonest practices and in preserving the integrity of horse racing is clear. It is a truism to say that the horse-racing industry depends upon public confidence in the sport and upon integrity and professional efficiency in its operation. A review of the Horse Racing Act and its comprehensive and detailed list of statutory requirements discloses the legislature's interest in imposing strict controls on an industry which on occasion has been vulnerable to dishonest men and practices." *Phillips v. Graham* (1981), 86 Ill. 2d 274, 286, 427 N.E.2d 550, 555.

 Where, in such an area as horse racing, "the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment." (*New York v. Burger* (1987), 482 U.S. 691, 702, 96 L. Ed. 2d 601, 613-14, 107 S. Ct. 2636, 2643.) The Court in *Burger* further stated that, in order for a warrantless inspection, even in a highly regulated industry, to be reasonable, three criteria must be met. First, the regulation authorizing the inspection must be drawn pursuant to a substantial government interest. Second, the warrantless inspection must be " 'necessary to further [the] regulatory scheme' " (*Burger*, 482 U.S. at 702, 96 L. Ed. 2d at 614, 107 S. Ct. at 2644, quoting *Donovan v. Dewey* (1981), 452 U.S. 594, 600, 69 L. Ed. 2d 262, 101 S. Ct. 2534, 2539). Third, the statute must provide for a sufficiently regular and certain application, as an adequate substitute for a warrant. That is, the statute must "advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." (*Burger*, 482 U.S. 691, 703, 96 L. Ed. 2d 601, 614, 107 S. Ct. 2636, 2644.) The "time, place, and scope of the inspection (*United States v. Biswell* (1972), 406 U.S.

311, 315, 32 L. Ed. 2d 87, 92, 92 S. Ct. 1593, 1596) must be limited in order "to place appropriate restraints upon the discretion of the inspecting officers" (*Burger*, 482 U.S. 691, 711, 96 L. Ed. 2d 601, 619, 107 S. Ct. 2636, 2648).

Defendant asserts that Rule 25.19 is consistent with the legislature's interest in imposing controls on the horse-racing industry. Further, defendant asserts that the rule provides a constitutionally adequate substitute for a warrant.

■ We find that the first constitutional requirement has been met, as there is a substantial government interest in regulating the horse-racing industry in order to protect the public. (*Phillips v. Graham* (1981), 86 Ill. 2d 274, 427 N.E.2d 550.) Regarding the second requirement, that the warrantless inspection must be "necessary to further [the] regulatory scheme," we find that there is some justification for allowing for warrantless searches. The searches are intended to discover the presence of illegal substances or devices which may be used on or in horses by employees of the racetrack to obtain an advantage over other horse racers. Warrantless searches are of benefit for the immediate detection of the use or possession of impermissible substances or objects. Syringes or other illegal objects are easily disposed of, and therefore, allowing for immediate searches of employees and their property is a desirable goal. Requiring a warrant for searches of racetrack employees could seriously impair inspection officers in discovering improper procedures shortly after they occur. Therefore, the warrantless inspection is arguably necessary to carry out the purpose of the rule.

We find, however, that Rule 25.19 fails to meet the third requirement, since the rule does not properly limit the discretion of the inspecting officers. For instance, the rule fails to provide the proper procedure for the officer to follow when the employee refuses to consent to or objects to part of the search, as occurred in the instant case when plaintiff refused to consent to a search of the truck. Nor does the rule set forth the procedure for the employee to follow who decides not to consent to the requested search. In addition, the rule fails to set forth appropriate times for inspections or the frequency of inspections, or the proper method for choosing who is subject to a search at a given time. In the instant case, Hofmann telephoned the racetrack's senior steward in order to discover the appropriate procedure upon plaintiff's objection to the search. The action of Hofmann, therefore, depended upon the advice of the steward. We believe that, in the interest of uniformity in application, the rule should set forth what is the proper procedure in the case of a refusal to consent to

such a search, and further, should provide for the proper times and frequency of searches. For these reasons, we believe that the rule fails to meet the third constitutional requirement and that the trial court was correct in finding the rule violative of the Constitution.

Defendant cites *People v. Strauss* (1986), 151 Ill. App. 3d 191, 502 N.E.2d 1287, in which the court found that a warrantless pat-down search of a jockey pursuant to Rule 25.19 was valid under the administrative search exception to the fourth amendment's warrant requirement and was reasonable under the circumstances. (*Strauss,* 151 Ill. App. 3d at 198.) Defendant notes that the court in *Strauss* declined to follow the holding and reasoning of *Serpas v. Schmidt* (N.D. Ill. 1985), 621 F. Supp. 734, later affirmed in *Serpas v. Schmidt* (7th Cir. (1987), 827 F.2d 23, *cert. denied* (1988), 485 U.S. 904, 99 L. Ed. 2d 234, 108 S. Ct. 1075, which case was relied on by the trial court in the instant case to find Rule 25.19 unconstitutional. Defendant contends that in the instant case, we should also decline to follow the reasoning in *Serpas* and should instead look to the analysis and holding in *Strauss* in reaching our decision.

In *Serpas,* the Seventh Circuit court addressed, among other things, a fourth amendment constitutional challenge of warrantless searches of the on-track dormitory rooms of racetrack employees. The court found that Rule 25.19 failed to provide for searches of the dormitories. (*Serpas,* 827 F.2d at 28.) The court stated, "[g]iven the legal protection historically afforded the home by the Fourth Amendment [citation], we will not assume that the Illinois legislature meant to authorize warrantless residential searches unless it clearly stated this intention." (*Serpas,* 827 F.2d at 29.) The court found that since the statute fails to allow for searches of residences, it fails to limit the discretion of inspecting officials who wish to search the dormitories. *Serpas,* 827 F.2d at 29.

We find the reasoning in *Serpas* to be instructive and in accord with constitutional requirements. Further, we decline to follow the analysis of *Strauss,* since the court in that case failed specifically to address the constitutional requirement set forth in *New York v. Burger* (1987), 482 U.S. 691, 96 L. Ed. 2d 601, 107 S. Ct. 2636, that the regulatory statute properly limit the discretion of the inspecting officers. In *Strauss,* the court declined to follow the reasoning in *Serpas* and instead asserted its reliance on the Third Circuit decision in *Shoemaker v. Handel* (3d Cir. 1986), 795 F.2d 1136, *cert. denied* (1986), 479 U.S. 986, 93 L. Ed. 2d 580, 107 S. Ct. 577, in which the court found that breathalyzer and urine tests of jockeys were constitutionally permissible. The court in *Strauss,* however, failed to recognize

that the court in *Shoemaker*, in finding the breathalyzer and urine tests constitutional, relied to a significant extent on its finding that the regulatory statute authorizing the tests left "no discretion" in the inspecting officer who conducts the searches. The court in *Shoemaker* found that the jockeys were subject to daily breathalyzer tests and that the urine tests were part of a daily program at the track, which involved a random method of choosing those who were to be searched. The choice of who would be tested was made by a lottery and in no way was left to the discretion of the searching officer. (*Shoemaker*, 795 F.2d at 1143.) The analysis in *Shoemaker*, therefore, is not contrary to the analysis employed in the instant case, and we are unpersuaded by defendant's argument that *Strauss* should be relied upon here.

Finally, defendant asserts in the alternative that if the circuit court was correct in finding that Rule 25.19 was unconstitutional on its face, the court erred in awarding plaintiff attorney fees and costs under section 14.1(b) of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1987, ch. 127, par. 1014.1(b)). Section 14.1(b) provides:

> "In any case in which a party has any administrative rule invalidated by a court for any reason, including but not limited to the agency's exceeding its statutory authority or the agency's failure to follow statutory procedures in the adoption of the rule, the court shall award the party bringing the action the reasonable expenses of the litigation, including reasonable attorney's fees." (Ill. Rev. Stat. 1987, ch. 127, par. 1014.1(b).)

Defendant asserts that since the court in *Serpas v. Schmidt* (7th Cir. (1987), 827 F.2d 23, *cert. denied* (1988), 485 U.S. 904, 99 L. Ed. 2d 234, 108 S. Ct. 1075, previously declared Rule 25.19 unconstitutional, plaintiff was not entitled to an award of costs and fees under section 14.1(b).

■■ ■ We disagree. Since the common law prohibited a prevailing party from recovering attorney fees, statutes which allow for such awards must be strictly construed. (*Navarro v. Edgar* (1986), 145 Ill. App. 3d 413, 495 N.E.2d 1085.) Section 14.1(b) allows for the recovery of attorney fees where a party has an administrative rule declared invalid. (See *Gonzales-Blanco v. Clayton* (1983), 120 Ill. App. 3d 848, 458 N.E.2d 1156.) However, where an administrative rule previously has been declared invalid, a subsequent case challenging the rule is not one in which section 14.1(b) authorizes an award of attorney fees. (*Sutton v. Edgar* (1986), 147 Ill. App. 3d 723, 498 N.E.2d 295.) The court in *Serpas* held that the application of Rule 25.19 to the circumstances in that case was unconstitutional. The facts of *Serpas* clearly

are distinguishable from the circumstances of the instant case, in that *Serpas* involved a search of an employee's on-track residence. The holding in *Serpas,* therefore, would not be controlling over the facts of the instant case. Our reading of the *Serpas* holding does not indicate that the court in *Serpas* found Rule 25.19 invalid or unconstitutional on its face. Therefore, we do not believe that the holding in *Serpas* precludes an award of attorney fees and costs under section 14.1(b) in the instant case.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA and WHITE, JJ., concur.