**Steven LeROY, Plaintiff–Appellant,**

v.

**ILLINOIS RACING BOARD, et al., Defendants–Appellees.**

No. 93–2099.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 7, 1994.

Decided Oct. 27, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 28, 1994.

Lawrence J. Weiner (argued), Scariano, Kula, Ellch & Himes, Chicago Heights, IL, for plaintiff-appellant.

Robert G. Toews (argued), Office of the Attorney General, Chicago, IL, for defendants-appellees.

Before POSNER, Chief Judge, and WELLFORD * and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Since 1958 Steven LeRoy has been licensed by Illinois as an owner, trainer, and driver of standardbred racehorses. When obtaining his licenses, LeRoy agreed to comply with rules established by the Illinois Racing Board. One of these rules forbids anyone other than a veterinarian to possess on the premises of any racetrack "any hypodermic syringe or needle or any instrument capable of being used for the injection into any horse of any chemical substance." Rule C9.10(a), codified at 11 Ill.Admin.Code 509.100. In order to enforce this and related rules the Board requires licensees to submit to searches on demand. Rule 25.19, 11 Ill.Admin.Code 1325.190. During the spring of 1987 the Illinois State Department of Law Enforcement made such a demand when LeRoy drove a pickup truck onto the grounds of the Maywood Park Racetrack. Officers found a hypodermic syringe and a dirty, clogged needle under the passenger seat. Finding that the needle could have been cleaned and used, the Board suspended LeRoy for 90 days.

Things went downhill from there. The suspension barred LeRoy from entering any racetrack in Illinois. Rule 22.3, 11 Ill.Admin.Code 1322.30. He did not comply, was caught, and was suspended for 30 additional days. In the process, he swore at an official of the Board, which led to a fine plus a suspension through the end of the 1987 season, followed by probation until December 31, 1988. (The Board's Rule 20.1, 11 Ill.Admin.Code 1320.10, provides that licensees may not use "improper language to an official, or be guilty of any improper conduct toward such officers".) Maywood's disciplinary board found that, while on probation, LeRoy had "used threatening and profane language towards the Association Steward at Maywood Park." That ended his association with racing for the rest of the 1988 season, coupled with an indefinite suspension of his licenses pending reapplication to the Board.

Believing that the search violated his rights under the fourth and fourteenth amendments, LeRoy filed this suit under 42 U.S.C. § 1983 seeking damages and an injunction requiring the Board and Stewards to expunge the disciplinary orders. (Apparently LeRoy has been reinstated; he does not seek any other prospective relief.) His principal theory is that all four suspensions depend on the search and must stand or fall together, although he raises some independent challenges to Rule 20.1. In a series of opinions, the district court granted the defendants judgment on the pleadings on one issue after another, 1990 WL 7072, 1990 U.S.Dist. LEXIS 544, 1990 WL 251815, 1990 U.S.Dist.

---

* Hon. Harry W. Wellford, of the Sixth Circuit, sitting by designation.

LEXIS 17589, 1992 WL 168528, 1992 U.S.Dist. LEXIS 10241, finally dismissing the suit altogether. 1993 WL 114609, 1993 U.S.Dist. LEXIS 4617.

The keystone of the district court's approach is its holding that the defendants possess qualified immunity from damages. Agents stopped LeRoy's pickup truck in April 1987. Four months earlier a panel of this court had held Rule 25.19 unconstitutional, at least to the extent it authorizes searches of living cubicles that some tracks provide for participants in the races. *Serpas v. Schmidt*, 808 F.2d 601 (7th Cir.1986). In April 1987 this court was considering whether to hear *Serpas* en banc. When the petition was denied in July 1987, the panel modified its opinion, and five judges registered dissents. *Serpas v. Schmidt*, 827 F.2d 23 (7th Cir.1987). Contemporaneous with the first panel opinion in *Serpas,* the Appellate Court of Illinois issued an opinion concluding that Rule 25.19 is valid as applied to a patdown search of a jockey by agents who suspected (correctly) that he possessed an electrical stimulator. *People v. Strauss,* 151 Ill. App.3d 191, 104 Ill.Dec. 627, 502 N.E.2d 1287 (1st Dist.1986). The district court held that an action authorized by a rule recently given a clear bill of constitutional health by a state court could not be thought to violate LeRoy's "clearly established" rights, see *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), even if a panel of this court thought the rule unconstitutional. According to the district court, not until 1989, when *Hansen v. Illinois Racing Board,* 179 Ill.App.3d 353, 128 Ill.Dec. 476, 534 N.E.2d 658 (1st Dist.1989), disapproved *Strauss* and held Rule 25.19 unconstitutional "on its face," did a racetrack search become a basis for damages. LeRoy believes that the view of a federal court takes precedence over the opinion of a state court, but we do not consider the extent to which a right may be called "clearly established" when judges disagree, because the search did not violate LeRoy's rights at all. Although defendants have not sought to defend Rule 25.19, the merits of the constitutional claim are an antecedent issue whenever the defendants plead immunity, one we may consider without regard to the litigants' tactical decisions. *Siegert v. Gilley,* 500 U.S. 226, 232–33, 111 S.Ct. 1789, 1793–94, 114 L.Ed.2d 277 (1991); cf. *Kamen v. Kemper Financial Services Inc.,* 500 U.S. 90, 99–100, 111 S.Ct. 1711, 1717–18, 114 L.Ed.2d 152 (1991).

■ *Serpas* dealt with the application of Rule 25.19 to residential searches. The panel emphasized not only the special privacy interest in one's living quarters but also the lack of statutory support for such searches. The statute on which the Board relied in promulgating Rule 25.19 speaks only of searches at the track and "other places of business," 230 ILCS 5/9(c), and the panel concluded that the state legislature thus implicitly found that residential searches are unnecessary, even if the living quarters are on the premises of race tracks. LeRoy's pickup truck was not his home; searches of automobiles may be justified by significantly lesser cause, given the reduced privacy interests involved coupled with vehicles' greater mobility. E.g., *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). And 230 ILCS 5/9(c) unquestionably authorizes Rule 25.19 to the extent it applies to vehicular searches on the grounds of racetracks.

■ Since *Serpas* this court has revisited the subject of searches at racetracks. *Dimeo v. Griffin,* 943 F.2d 679 (7th Cir.1991) (en banc), holds that racing officials do not need person-specific cause, or warrants, before they may conduct drug tests of persons associated with the sport. We observed in *Dimeo* that horse racing is a tightly regulated business, a fact that permits searches designed to enforce the terms of the regulatory regime. See also, e.g., *New York v. Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (automobile junkyard); *Donovan v. Dewey,* 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (coal mine); *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (gun dealer); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (liquor dealer); *Lesser v. Espy,* 34 F.3d 1301 (7th Cir.1994) (rabbitry). *Dimeo*

concluded that the public interest in drug testing at racetracks is substantial: drugs (whether administered to horses or ingested by jockeys) diminish the safety of a sport that is already dangerous given the size and speed of horses, and the potential for use of drugs to affect races diminishes public confidence in the races and thus jeopardizes the revenue obtained from taxes on wagers. The privacy interest also is significant (some persons are embarrassed by the scrutiny that may be necessary to collect urine samples for drug testing), but not so great, we held, that the state requires probable cause or a warrant. We explained *Serpas* this way:

> *Serpas v. Schmidt*, 827 F.2d 23 (7th Cir. 1987), rejected Illinois's claim to be allowed to conduct random searches of the living quarters of "backstretchers," who take care of horses at race tracks but do not participate in the race. It was not a drug-testing case but an old-fashioned search case, and the persons to be tested were not actual race participants. So the intrusion on privacy was greater and the state interest weaker.

943 F.2d at 684. Much the same may be said today. LeRoy is licensed to participate in races; the search was used to enforce a rule related to drugs; an automobile search is less intrusive than a residential search. *McGann v. Northeast Illinois Regional Commuter R.R.*, 8 F.3d 1174 (7th Cir.1993), on which LeRoy relies, deals with an attempt to use the public ownership of real estate as a basis to require all entrants to consent to search; it has nothing to do with administrative searches on the premises of tightly regulated industries. We do not think that the use of Rule 25.19 to authorize searches of licensees' vehicles at racetracks is open to serious question.

We say this notwithstanding the conclusion of *Hansen* that Rule 25.19 is invalid "on its face"—that is, in every possible application. The Appellate Court of Illinois believed that participants in horse racing may be subject to administrative searches. It held, however, that Rule 25.19 is invalid because it "does not properly limit the discretion of the inspecting officers." 179 Ill.App.3d at 359, 128 Ill.Dec. at 480, 534 N.E.2d at 662. *Hansen* attrib-

uted the requirement of limited discretion to our opinion in *Serpas* and the Supreme Court's opinion in *Burger*. If this was indeed an independent holding of *Serpas,* it did not survive *Dimeo,* for that case permitted random, suspicionless drug testing. And our reading of *Burger* differs from that of the judges who decided *Hansen.* Although the Supreme Court stated that the rules establishing a program of administrative inspections "must limit the discretion of the inspecting officers", 482 U.S. at 703, 107 S.Ct. at 2644, it also concluded that a statute authorizing searches during business hours, and informing participants in the industry, satisfies this requirement. *Id.* at 711–12, 107 S.Ct. at 2648–49. See also *Lesser,* at 1308–09, concluding that statutes giving inspectors access to the business premises of rabbitries on demand satisfy the fourth amendment. Rule 25.19, by limiting searches to licensees on the premises of the tracks, likewise curtails discretion. The Court rejected in *Burger* an argument that the statute must create criteria for searches or announce a schedule of inspections. Such steps, the Court held, would render the inspections ineffectual, because persons with something to hide could use their knowledge to avoid detection. 482 U.S. at 710, 107 S.Ct. at 2648. The Court believed that "surprise is crucial if the regulatory scheme . . . is to function at all." *Ibid.* Just so here.

One final comment about *Serpas* is in order. The last page of the panel's opinion, 827 F.2d at 30, concluded that the application of Rule 25.19 to the search of back-stretchers' persons outside their quarters stood on the same ground as the searches of the quarters themselves. This may have been a consequence of the parties' litigation strategy: "Appellants have not suggested that we should analyze the personal searches any differently from the residential searches". *Ibid.* To the extent the panel believed that pat-downs and automobile searches are indeed subject to the same rules as residential searches, subsequent cases (including *Acevedo* and *Dimeo* ) have undercut its conclusion. This portion of *Serpas* can no longer be considered authoritative.

*Dimeo* applied its holding to the parties, and that decision therefore is fully retroactive. *Harper v. Virginia Department of Taxation,* —— U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). See also *Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). Because the search was permissible, most of LeRoy's remaining arguments collapse. Three other contentions deserve brief attention, however.

▮ Rule 20.1 forbids "improper language" or "improper conduct" by licensees toward regulators. LeRoy suffered two sanctions under this rule, the first for profanity and the second for a combination of threats and profanity. He does not contend that the Constitution permits him to threaten public officials (see *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969); cf. *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)) or that the profanity was a means to make a political point (contrast *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971)). Instead he contends that Rule 20.1 is "vague and overbroad." As a norm addressed to the general public for the conduct of daily affairs, Rule 20.1 would be seriously deficient. *Hess v. Indiana,* 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973); *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). But it is addressed instead to licensees, governs only their relations with regulators concerning "the administration of the course, or of any race thereon," and is administered by an agency that, through a series of decisions, can add details. The system Illinois applies to the racing industry has much in common with civil service laws, which despite their many vague terms were sustained in *Broadrick v. Oklahoma,* 413 U.S. 601, 607–15, 93 S.Ct. 2908, 2913–18, 37 L.Ed.2d 830 (1972), and *CSC v. Letter Carriers,* 413 U.S. 548, 568–81, 93 S.Ct. 2880, 2892–98, 37 L.Ed.2d 796 (1973), and with the Uniform Code of Military Justice, whose prohibitions against "conduct unbecoming an officer and a gentleman" and "disorders and neglects to the prejudice of good order" met approval in *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). LeRoy does not contend that his own conduct lay outside the bounds of a properly drawn pro-

hibition. Whatever deficiencies Rule 20.1 may display in application to others are not salient, for the rule is not "substantially overbroad" in the sense that a significant fraction of its applications would forbid or deter protected speech. See *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503–04, 105 S.Ct. 2794, 2801–02, 86 L.Ed.2d 394 (1985).

▮ The threats and profanity led to extended suspensions. LeRoy attached to his complaint decisions imposing lighter penalties on other persons who violated Rule 20.1. The difference between the sanctions meted out to him, and those meted out to others, violates the equal protection clause of the fourteenth amendment, LeRoy believes. But the Constitution does not require similar penalties for similar wrongs. *Chapman v. United States,* 500 U.S. 453, 465, 111 S.Ct. 1919, 1927–28, 114 L.Ed.2d 524 (1991); *Wayte v. United States,* 470 U.S. 598, 607–10, 105 S.Ct. 1524, 1530–32, 84 L.Ed.2d 547 (1985); *FTC v. Universal–Rundle Corp.,* 387 U.S. 244, 87 S.Ct. 1622, 18 L.Ed.2d 749 (1967); *Falls v. Town of Dyer,* 875 F.2d 146 (7th Cir.1989). LeRoy does not contend that race, religion, or some other forbidden consideration accounts for the difference. More likely the reason for the stiff penalty is LeRoy's recidivism, a perfectly appropriate ground.

▮ Finally, LeRoy throws all of his arguments into a stewpot and contends that even if each falls short, the congeries violates "substantive due process." This invented doctrine does not authorize courts to expand constitutional clauses at will. *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). No concrete constitutional provision disables a state from suspending horse owners and drivers who bring syringes into race-tracks or from insisting that licensees abide by the terms of their suspensions and behave civilly. Which acts to forbid, and which penalties to attach to violations, are fit subjects for decision according to state law. Federal courts are not appellate boards within the state's administrative hierarchy. Cf. *River Park, Inc. v.*

*Highland Park,* 23 F.3d 164 (7th Cir.1994). LeRoy could have obtained, but spurned, review in state court. If he is looking for review after the fashion of the Administrative Procedure Act, he has come to the wrong place.

AFFIRMED.

WELLFORD, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority view that plaintiff LeRoy does not establish any "substantive due process" violation. I also concur that the penalties imposed upon LeRoy by defendant Board for threats and profanity have not been shown to violate constitutional equal protection requirements.

Respectfully, I cannot agree and, therefore, dissent to the qualified immunity issue with regard to the search at issue.

On April 27, 1987, Steven Leroy, plaintiff, drove a pick-up truck on the grounds of the Maywood Park Racetrack. Plaintiff's truck was searched pursuant to Illinois Racing Board ("IRB") Rule 25.19.[1] A syringe and a needle were found in the plaintiff's truck. The syringe was "clogged," and defendants admit there was no evidence that the needle was capable of being used for injection of any chemical substance into any horse. In addition, defendants admit that plaintiff's horses were tested and found not to have been administered with any prohibited substance or medication. Nevertheless, plaintiff and his horses were excluded by defendant Stewards.[2] The Stewards also suspended plaintiff for ninety days from all racing tracks licensed by the IRB.

A federal district court *in July, 1985,* considered the constitutionality of the IRB Rule 25.19 in a case dealing with residential quarters at Arlington Park Racetrack in Illinois. *Serpas v. Schmidt,* 621 F.Supp. 734 (E.D.Ill. 1985). The district court entered a broad injunction, after a hearing, *permanently enjoining* the IRB and its members, among other things, from "conducting or authorizing searches and seizures of ... plaintiffs and the class they represent without warrants and probable cause." *Id.* at 744. In addition, the district court similarly enjoined "conducting or authorizing investigatory stops of plaintiffs and the class they represent without at least a reasonable suspicion, based on specific, articulable facts, that the person stopped is engaged in criminal activity." *Id.* Finally, this injunction enjoined "conditioning the issuance of occupational licenses upon applicants' forfeiture of their constitutional rights...." *Id.*

On appeal, a panel of this court affirmed the decision of the district court. *Serpas v. Schmidt,* 808 F.2d 601 (7th Cir.1986). This decision was issued only a few months before the episode in question, holding:

> The district court also enjoined the Board and IDLE's practice of conducting warrantless stops and searches of the backstretchers' persons within the race track enclosure. Appellants have not suggested that we should analyze the personal searches any differently from the residential searches, and we, too, think that the same rules apply. Like searches of property, searches of the person are generally impermissible absent a warrant issued upon a determination of a probable cause. *New York v. Belton,* 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981); *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1268 (7th Cir.1983). The deficiencies we have noted in the statute and regulatory scheme apply equally to these *personal searches....*

*Serpas,* 808 F.2d at 607 (emphasis added).

During the plaintiff's suspension period after the personal search without warrant and, allegedly, without reasonable suspicion or probable cause, this court denied rehearing and reissued a similar opinion regarding personal searches on IRB track enclosures. *Serpas v. Schmidt,* 827 F.2d 23 (7th Cir. 1987).

Based on these facts alone, defendants cannot claim qualified immunity for the

---

1. Rule 25.19 requires consent to search as a condition to the obtainment and maintenance of a racing license.

2. The defendant Stewards included Richard E. Garret, Robert D. Ward, Timothy Schmidtz, Frank Deglamine, and Robert Milburn.

April, 1987 search, seizure and suspension. (The judges who comprise the majority on this panel, however, vigorously dissented from denial of an *en banc* hearing, 827 F.2d at 34). Presumably, the injunction remained in effect.

An Illinois appellate court, in the meantime, on December 31, 1986, issued an opinion on the constitutional validity of Rule 25.19, *People v. Strauss*, 151 Ill.App.3d 191, 104 Ill.Dec. 627, 502 N.E.2d 1287 (1986), based upon a very different set of facts from *Serpas* and the instant case. Track authorities had detected a "suspicious betting pattern" which involved jockey Strauss' horse. Upon a subsequent pat-down search of Strauss, an illegal device was found. Upon Strauss' challenge to the search under Rule 25.19, the Illinois trial court declared this rule unconstitutional. The Illinois Court of Appeals, without any reference to *Serpas* or its injunction, held the rule to be constitutional in the face of Strauss' particular challenge. The holding was based upon the unusual betting pattern centered upon Strauss and because "the pat-down search is considered the least intrusive type." *Id.* at 198, 104 Ill.Dec. at 631, 502 N.E.2d at 1291.

*Strauss* held that under the circumstances, defendant's "justifiable privacy expectation is minimal," and that only " 'a minimal showing of suspicions' be present to justify a pat-down search," which was "not considered an extensively intrusive search." The holding was expressly limited to "the warrantless search ..., *based on the facts of this case.*" *Id.* at 198, 104 Ill.Dec. at 632, 502 N.E.2d at 1292 (emphasis added).

In this case, the district court's decision concluded that "the Illinois Appellate Court declined to follow the *Serpas* decision." This may be so, but *Strauss* made no mention of *Serpas* or its injunction; in addition and most important, there was a reasonable suspicion in *Strauss*, on the basis of which track authorities made a minimally intrusive search. The *Strauss* court also may not have been aware of *Serpas*, but, in any event, *Strauss*

limited the effect of its decision to the distinctive facts of that case. *Serpas*, on the other hand, was a broad class action type of case, involving track employees' challenge to "investigatory stops and searches of [their] persons within the race track enclosure." *Serpas*, 808 F.2d at 602.

Furthermore, in *Hansen v. Illinois Racing Board*, 179 Ill.App.3d 353, 128 Ill.Dec. 476, 534 N.E.2d 658 (1989), a person in a similar position to LeRoy challenged a proposed search of a pickup truck at a racetrack under Rule 25.19 and was successful in establishing the Rule's unconstitutionality once again. In *Hansen*, the track stewards, based upon the party's refusal to permit a search of the vehicle *in May of 1987*, decided that "the proper procedure was not to search the truck," but to suspend Hansen's license. 128 Ill.Dec. at 478, 534 N.E.2d *Id.* at 660.[3] Neither the Illinois trial court nor the Illinois appellate court felt bound by *Strauss* and its particular fact ruling. Instead, these Illinois courts deemed *Serpas* to be "instructive and in accord with constitutional requirements." *Id.* 128 Ill.Dec. at 480–81, 534 N.E.2d at 662–63.

In testing defendants' claim of qualified immunity, we look to see if "constitutional standards [were] clearly established at the time in question." *Rakovich v. Wade*, 850 F.2d 1180, 1210 (7th Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), discussed qualified immunity in the context of whether the state official involved "could be fairly said to 'know' that the law forbade conduct *not previously identified as unlawful.*" (emphasis added). In April of 1987, I believe that defendants reasonably might be said to have known or deemed to have realized that the conduct involved in an arbitrary search of LeRoy was unlawful or unconstitutional. Defendants were charged with knowledge that a federal district court had enjoined them from engaging in this kind of conduct as unlawful and that this

---

**3.** As to the issue of LeRoy's consent to the search in this case, this court held in *McGann v. Northeast Ill. Regional Commuter R.R. Corp.*, 8 F.3d 1174, 1184 (7th Cir.1993), that "if there was an

unlawful seizure, [the issue was whether] plaintiff's conduct was 'sufficiently an act of free will to purge the primary taint' of the unlawfulness."

court had affirmed that decision, and that, again, ratified those decisions before the suspension of LeRoy had expired. They knew, or should have known, the Illinois state trial judge had agreed with that rationale in *Strauss,* but this decision had been reversed on and limited to the particular (and dissimilar) facts in that case. They may have been aware that another Illinois state judge in *Hansen* had found Rule 25.19 unconstitutional on its face before the suspension was lifted.

Based on these facts and the state of the law in 1987, I would find it error for the district judge to have granted a Fed.R.Civ.P. 12(b)(6) motion in favor of defendants on the basis of qualified immunity. It may be that defendants will ultimately prevail on this defense, but the dismissal was premature, I believe, under the circumstances.

I am mindful that much later, in 1991, a divided *en banc* court in *Dimeo v. Griffin,* 943 F.2d 679 (7th Cir.1991), held "that racing officials [in Illinois] do not need person-specific cause, or warrants before they may conduct drug tests of persons associated with the sport." I do not agree that *Dimeo* (decided in 1991) may be retroactively applied in this case to consideration of a claim of qualified immunity to a 1987 episode, which claim must take into account the state of the law as to asserted violation of constitutional rights in 1987. While *Serpas,* 827 F.2d at 23, may be deemed "no longer authoritative" by the majority (as of 1991), for the reasons I have stated, I believe it was sufficiently authoritative (and its injunction binding) to preclude a Rule 12(b)(6) motion in this case.

I, therefore, dissent from the Rule 25.19 holding only and the grant of qualified immunity under the circumstances.